ROBERT BROWN, BY AND THROUGH HIS NEXT FRIEND, PAUL BROWN, v. THE FIDELITY & CASUALTY COMPANY OF NEW YORK.

(Filed 23 March, 1955.)

**1. Insurance § 13—**

Statutory provisions applicable to a policy of insurance enter into and form a part of the contract to the same extent as if they were actually written in it.

**2. Insurance § 43a—**

A policy of insurance endorsed on its face "N. C. Assigned Risk Plan" is governed by the Motor Vehicles Safety and Responsibility Act, G.S. 20, Art. 9.

**3. Insurance § 43b—**

Insurer in an assigned risk policy on a truck is not liable for injuries inflicted by insured while driving a farm tractor, since a farm tractor is not a motor vehicle within the purview of the Uniform Drivers' License Act, the statute relating to the registration and certificate of titles of motor vehicles, or the Motor Vehicles Safety and Responsibility Act, G.S. 20-226, G.S. 20-6, G.S. 20-7, G.S. 20-8.

BARNHILL, C. J., took no part in the consideration and decision of this case.

APPEAL by plaintiff from *Pless, J.,* at September Term 1954, of WILKES.

Civil action by third party to recover on automobile policy issued by defendant to Council Pat Hayes under "N. C. Assigned Risk Plan," on judgment in prior action for personal injuries sustained by plaintiff as result of actionable negligence of insured in operation of an agricultural tractor—pulling a hay rake upon public highway—on which execution has been returned *nulla bona.*

These facts appear to have been admitted in the pleadings:

1. The plaintiff, Robert Brown, is a minor child, for whom the plaintiff Paul Brown, his father, has been appointed next friend, both being residents of Wilkes County, North Carolina.

2. The defendant, a corporation, duly organized and existing under the laws of the State of New York, was on 20 February, 1951, and prior thereto, and on 29 June, 1951, duly authorized and empowered to engage in the business of writing casualty insurance in the State of North Carolina by the proper agencies of said State, and issued to one Council Pat Hayes an insurance policy designated as an automobile policy, numbered VF-1323995, covering the period from 20 February, 1951 to 20 February, 1952, which was in effect on 29 June, 1951.

In addition to these matters, plaintiff alleges in his complaint substantially the following:

1. That at January Term 1952 of Wilkes County Superior Court plaintiff recovered judgment against Council Pat Hayes in sum of $8,000 as damages for personal injuries to Robert Brown sustained on 29 June, 1951 as result of the negligent operation of "a motor vehicle" by said Hayes; that said judgment has been duly docketed in office of Clerk of Superior Court of said county; and that execution was duly issued thereon to Sheriff of Wilkes County, and has been returned *"nulla bona"*; and that Council Pat Hayes is without sufficient property of any character to satisfy the judgment.

2. That pursuant to the terms of the automobile policy of insurance Number VF-1323995, issued to Council Pat Hayes as above stated, defendant agreed to pay on his behalf all sums of money which he should become obligated to pay by reason of liability imposed upon him for damages because of bodily injury sustained by any person,—within a limit of $5,000 as to each person.

3. That the said policy of automobile insurance was issued by the defendant to Council Pat Hayes under and pursuant to the laws of the State of North Carolina and specifically the statute known as The Financial Responsibility Act, under what is known as the assigned risk plan.

4. That defendant was duly notified of the injuries to the person of Robert Brown at the time, or shortly after, they occurred and defendant had due opportunity to defend the suit instituted by plaintiff against Council Pat Hayes; but that defendant denied that the policy covered the case, and would not defend the action.

5. That defendant is justly indebted to plaintiff in amount of $5,000 with interest.

Defendant answering denied these allegations of the complaint.

And at the September Term 1953 of Wilkes County Superior Court, and upon motion of defendant, plaintiff was ordered to amend his complaint in such manner as to describe the motor vehicle to which reference is made in the complaint and which the insured is alleged to have been operating.

Pursuant to this order plaintiff amended his complaint by alleging that "the said Council Hayes was operating a four-wheel, self-propelled motor vehicle, being used at the time of said accident as a passenger vehicle and while being so used, possessing the nomenclature of an automobile; that said vehicle is capable of being used as a tractor and when so being used as a tractor possesses the nomenclature of a farm tractor."

And the record shows that at September Term 1954, "after the jury was impaneled, the court conferred with the attorneys, and following said

conference the attorneys for the plaintiff and defendant stipulated as follows:

"The recovery obtained at the January 1952 Term of Wilkes Superior Court in the cause of the plaintiff against Council (Pet) Hayes, was based upon an accident occurring June 29, 1951 on Roaring River Street in the village of Mountain View (population approximately 400), Wilkes County. The evidence for the plaintiff tends to show that he was riding a bicycle on said street, that he overtook and passed Council (Pet) Hayes, who was operating a 1946 Ford tractor pulling a hay rake, a picture of said tractor and rake being made a part of these stipulations. After the plaintiff had passed this vehicle he heard a noise as if the motor had speeded up and was struck from the rear by said vehicle, sustaining certain personal injuries. Upon suit being brought by the plaintiff against Council (Pet) Hayes, the defendant insurance company herein was notified of the pendency of the action and declined to defend the same upon the grounds that it was not liable under its policy No. VF 1323995 with the endorsements thereto, upon which the premiums had been paid, and which was in effect at the time of said accident under the provisions of the Financial Responsibility Act as it existed in 1951. Judgment by default and inquiry was obtained, and upon the inquiry at the January Term 1952 plaintiff obtained a recovery of $8,000. This suit was instituted for the purpose of holding the defendant Insurance Company liable to the plaintiff for said judgment after execution had been returned 'unsatisfied' against Council (Pet) Hayes. The policy together with the endorsements, is hereby made a part of these stipulations.

"The plaintiff is in position to offer evidence tending to show that the tractor was not the property of the insured, Council (Pet) Hayes, and the defendant is in position to show that it did belong to Council (Pet) Hayes. The plaintiff proposed to offer evidence of C. C. Faw, Jr., of the Faw Insurance Agency, through whom said policy was assigned, and to whom the premium was paid, that an endorsement was made to said policy changing the vehicle designated in said policy from a 1948 Model half ton pickup truck to a 1948 Ford two-door sedan. That this endorsement was made and was in effect prior to June 29, 1951, the date of the injury to the plaintiff. That in the issuance of the insurance policy, the paragraph appearing in the insurance policy, to-wit, paragraph five, designated as 'the purpose for which the automobile is to be used' is governed by the character and type of motor vehicle described in the policy. That when the motor vehicle is described as a truck, the purpose is designated under paragraph five as commercial. That when the motor vehicle described in the policy is a passenger vehicle, that the purpose, under paragraph five, is designated as pleasure and business.

"The defendant objects to the introduction of this evidence of C. C. Faw, Jr., and the court, for the purpose of this stipulation, overruled said objection.

"The above stipulations are made in the interest of time and to save unnecessary expense to constitute the evidence which would have been offered by the plaintiff, and are accepted by the court in order that the main point at issue, that being whether or not the tractor described in the stipulations is covered by the insurance policy, can be presented and determined by the Appellate Court."

And that "upon the foregoing stipulations, the court was of the opinion that the plaintiff's cause of action should be dismissed as of nonsuit, and in deference to said opinion, the plaintiff submitted to judgment of voluntary nonsuit and gave notice of appeal to the Supreme Court."

"Consented to:

> W. H. McElwee, Jr.
> Trivette, Holshouser & Mitchell,
> Attorneys for Plaintiff.
>
> Patrick & Harper,
> Attorneys for Defendant."

This judgment followed: "This cause was heard before the undersigned presiding Judge, and a jury. Upon the stipulations entered in the record, the Court was of the opinion and so held that the cause should be dismissed as of nonsuit, and in deference thereto the plaintiff submits to judgment of voluntary nonsuit.

"It is therefore ORDERED, ADJUDGED AND DECREED that the cause be and is hereby dismissed as of voluntary nonsuit, and the plaintiff is taxed with the cost."

To the respective rulings of the court that the plaintiff's cause of action should be dismissed as of nonsuit, and to the signing of the judgment, plaintiff excepted, and appeals to Supreme Court and assigns error.

*W. H. McElwee, Jr., and Trivette, Holshouser & Mitchell for plaintiff, appellant.*

*Patrick & Harper for defendant, appellee.*

WINBORNE, J. The stipulations on which the ruling of the trial court was made to rest are manifestly insufficient to make a case for the jury.

Admittedly the main point at issue is whether or not the tractor described in the stipulations is covered by the insurance policy on which the action is based.

The automobile, described in the policy, is a "1948 Ford ½ T. Pickup Truck," and the purpose for which it is to be used is "Commercial."

And the term "commercial" is defined "as use principally in the business occupation of the named insured as stated in declaration 1, including occasional use for personal, pleasure, family, and other business purposes." The occupation of the named insured is "Farmer & Garage Owner."

Moreover, the policy provides in paragraph V as to "Use of other automobiles." "If the named insured is an individual who owns the automobile classified as 'pleasure and business' . . . such insurance as is afforded by the policy for bodily injury liability, . . . applies with respect to any other automobile subject to the following provisions:

"(a) With respect to the insurance for bodily injury liability . . . the unqualified word 'insured' includes (1) such named insured (2) . . . or (3) any other person . . . responsible for the use by such named insured . . . of an automobile not owned by or hired by such other person . . ."

Also it may be noted that the vehicle is mentioned in the policy as "Automobile," and not as "Motor vehicle."

Furthermore the policy is endorsed on its face "N. C. Assigned Risk Plan." That plan is provided for in the Motor Vehicle Safety and Responsibility Act, 1947 Session Laws of N. C., Chapter 1006, codified as Art. 9 of Chapter 20 of General Statutes.

"Where a statute is applicable to a policy of insurance, provisions of the statute enter into and form a part of the policy to the same extent as if they were actually written in it," so wrote *Ervin, J.,* in the recent case of *Howell v. Indemnity Co.,* 237 N.C. 227, 74 S.E. 2d 610.

Turning now to the Motor Vehicle Safety and Responsibility Act, G.S. 20-226, in effect on 29 June, 1951, the date on which plaintiff sustained the injury here involved, it is seen that the General Assembly declared that "unless a different meaning is clearly required by the context," the term " 'motor vehicle' means every vehicle which is self-propelled, or designed for self-propulsion, and every vehicle drawn, or designed to be drawn, by a motor vehicle, and includes every device in, upon or by which any person or property is or can be transported or drawn upon a highway, except devices moved by human or animal power, and devices used exclusively upon stationary rails or tracks, *and vehicles used in this State but not required to be licensed by the State.*" (Italics ours.)

And now adverting to Part 3 of Chapter 20 of the General Statutes, entitled "Registration and Certificates of Titles of Motor Vehicles," likewise effective on 29 June, 1951, it is seen in G.S. 20-51 that there shall be exempt from the requirement of registration and certificate of title, among others, "f. Farm tractors equipped with rubber tires and trailers or semi-trailers when attached thereto and when used by a farmer, his tenant, agent or employee in transporting his own farm implements, farm supplies, or farm products from place to place on the same farm, from

one farm to another, from farm to market, or from market to farm. This exemption shall extend also to any tractor and trailer or semi-trailer while on any trip within a radius of ten miles from point of loading . . ."

Indeed in Article 2 of Chapter 20 of General Statutes, entitled "Uniform Drivers' License Act" it is provided in G.S. 20-6 that unless another meaning is clearly apparent from the language or context or unless such construction is inconsistent with the manifest intention of the Legislature, terms used in this article shall be construed as follows: " 'Motor vehicle' shall mean any rubber tired vehicle propelled or drawn by any power other than muscular, *except* aircraft, road rollers, street sprinklers, ambulances owned by municipalities, baggage trucks, and tractors used about railroad stations and yards, *agricultural tractors,* industrial tractors used in and around warehouses and yards, and such vehicles as run only upon rails or tracks." (Emphases ours.)

And in G.S. 20-7 it is declared, among other things, that "except as otherwise provided in Sec. 20-8, no person shall operate a motor vehicle over any highway in this State unless such person has first been licensed as an operator or a chauffeur by the Department under the provisions of this article."

And in G.S. 20-8 there is exempted from license "(b) any person while driving or operating any road machine, farm tractor, or implement of husbandry temporarily operated or moved on a highway."

Therefore it is manifest from a reading of the provisions of the Motor Vehicle Act, Chapter 20 of the General Statutes, that farm tractors are not to be considered motor vehicles within the provisions of the Uniform Drivers' License Act, the statute relating to the registration and certificate of titles of motor vehicles, or in the Motor Vehicles Safety and Responsibility Act. Hence the farm tractor involved in the case in hand is not covered by the policy of insurance on which this action is founded. Thus whether or not the stipulation of the parties on which decisions below rests declares the ownership of the farm tractor, is immaterial.

The judgment of nonsuit from which this appeal is taken is
Affirmed.

BARNHILL, C. J., took no part in the consideration and decision of this case.