FRED E. ELLIS *vs.* HORACE A. NOWELL.

Middlesex.          March 16, 1908. — April 4, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Contract,* Performance and breach. *Damages.*

At the trial of an action for breach of a contract in writing, it appeared that by the contract the defendant permitted the plaintiff to quarry stone from a ledge of the defendant and to crush it for sale, and that the contract might be terminated by four months' notice in writing by either party to the other. Without giving such notice, the defendant told the plaintiff that he was going to lease the premises to another, to which the plaintiff gave his assent on the condition that suitable "arrangements" should be made for him. The defendant leased the premises, but there were no "arrangements" made for the plaintiff. *Held,* that the plaintiff had not assented to the lease, and that the defendant had broken the agreement.

At the trial of an action for breach of a contract whereby the defendant permitted the plaintiff to extract stone from a ledge owned by him, it appeared that the defendant had broken the contract by leasing the premises containing the ledge to another without giving to the plaintiff a notice called for by its terms, and there was evidence tending to show that, just before executing the lease, the defendant had told the plaintiff that he was going to make it, that at that time negotiations were pending between the plaintiff and one G. for the sale to G. of stone which the plaintiff was to take from the defendant's ledge, that, after the

defendant told the plaintiff of his intention, but before he actually made the lease, the plaintiff and G. made a contract, and that the plaintiff could not get elsewhere stone with which to fill the contract with G. at a profit. *Held,* that in assessing damages it was proper to take into consideration the contract with G. which the defendant had made it impossible for the plaintiff to perform at a profit.

CONTRACT for breach of an agreement in writing. Writ in the Superior Court for the county of Middlesex dated June 6, 1902.

At the trial before *Lawton,* J., without a jury, the execution of the agreement was admitted. By its terms the defendant agreed to allow the plaintiff to remove stone from a lot of land on Denver Street in Saugus for five cents per ton, and, in consideration of certain money advanced by the plaintiff to build a side track on the premises running to the Boston and Maine Railroad, the defendant agreed that the plaintiff might keep one cent per ton until thus reimbursed for the advance. " This contract can be determined by either party by giving four months' notice in writing to the other and the party of the second part paying balance due for construction of side track to party of the first part, otherwise the contract is to remain in force."

The evidence introduced by the plaintiff tended to show that, without having given any notice to him in writing, the defendant " saw him with reference to leasing the quarry to one O'Brien," and he " admitted that he told the defendant that the same was satisfactory to him, provided suitable arrangements were made concerning " him ; that, before the plaintiff knew of the defendant's intention to lease the premises, he had offered to furnish to one Gill, a contractor, three thousand tons of crushed stone at eighty-five cents per ton; that this offer was accepted by Gill on the evening of the day when the plaintiff and the defendant had the conversation about a lease by the defendant to O'Brien; that the next day the defendant told the plaintiff that he had made a lease to O'Brien. Subsequently the plaintiff unsuccessfully attempted to make arrangements with O'Brien with regard to taking out crushed stone from the quarry. O'Brien by a suit in equity compelled him to quit the premises. There was evidence that the plaintiff was unable to procure elsewhere stone with which to fill the Gill contract at a profit to himself, and that the profit on the Gill contract would have

been twenty cents per ton. The defendant introduced evidence tending to show that the plaintiff was in arrears in his payments under the contract.

The defendant requested the judge to rule (1) that upon all the evidence the plaintiff was not entitled to recover; (2) that the plaintiff, being in default or arrears on his contract, cannot maintain a claim against the defendant for a breach of the contract by him; (3) that the plaintiff cannot recover for profits on a contract made two days after notice of the termination of the agreement with the defendant; (4) that, the plaintiff being in arrears or default, the defendant had the right to terminate the contract with him without notice." As to these requests, the judge ruled: " The first is refused. The other three are refused because they are in each case based on an assumed finding of fact, which finding of fact was not made. I do not find that the plaintiff was in default or arrears or that he received notice of the termination of the agreement before the contract with Gill was made." There was a finding for the plaintiff in the sum of $4,510, and the defendant alleged exceptions.

*J. H. Sisk, W. E. Sisk & R. L. Sisk,* for the defendant, submitted a brief.

*J. C. Woodman,* for the plaintiff.

SHELDON, J. It is plain that the judge could not have ruled that the plaintiff was not entitled to recover. The defendant by his lease to O'Brien determined and ended the plaintiff's rights under the written contract between the parties; there was evidence and the judge must have found that the plaintiff's assent to this lease was conditional upon suitable arrangements being made for the plaintiff, and that this was not done. Accordingly the plaintiff was entitled to recover at least nominal damages.

The second and fourth requests are disposed of by the finding that the plaintiff was not in default or arrears.

As to the third request, the judge seems to have considered in assessing damages only the plaintiff's contract with Gill. There was evidence that the plaintiff had made his offer to Gill before he knew of the defendant's intention to lease the premises, but that Gill did not accept the offer until after the defendant had told the plaintiff that he was going to sign the lease. But the plaintiff, after his talk with the defendant, might well have

expected the defendant to comply with the obligation of his contract by making suitable arrangements in the projected lease to protect the plaintiff's rights; the lease apparently was not executed until after the plaintiff's contract with Gill had been closed; and on the judge's finding the plaintiff did not receive notice of the termination of his agreement before the contract with Gill was made. Accordingly the third request was not applicable to the case, and was rightly refused. There is nothing in the bill of exceptions to show what rules the judge adopted for the assessment of damages, or whether anything was allowed for loss of profit under the Gill contract. It does not appear that any erroneous ruling was made on this question.

*Exceptions overruled.*