MATTHEW MOORE v. TOWN OF PLYMOUTH, NORTH CAROLINA, PAUL BASNIGHT, ALFRED BARNES, W. A. DANIEL AND HERBERT E. MANNING.

(Filed 28 January, 1959.)

**1. Automobiles § 7—**
Fog on a highway, even though temporary, increases the hazards and requires increased caution on the part of motorists.

**2. Same—**
A red light is a recognized method of giving warning of danger, and a driver seeing a red light ahead of him on the highway is required, in the exercise of due care, to heed its warning.

**3. Automobiles § 15—**
The right of a motorist to assume that vehicles approaching from the opposite direction will remain on their right side of the highway is not absolute, and when a motorist approaches a machine emitting a chemical fog obscuring the entire highway, he may not rely on such assumption when a reasonably prudent man might reasonably anticipate that a motorist might be on the highway meeting him and unable to keep safely on his side of the highway on account of the fog.

**4. Same—**
A motorist is required to drive his vehicle with due caution and circumspection at all times and at a speed and in a manner so as not to endanger or be likely to endanger any person or property. G.S. 20-140.

**5. Negligence § 5—**
There can be more than one proximate cause of an injury, and negligence which continues to the moment of impact is a proximate cause thereof.

**6. Negligence § 6—**
Concurrent negligence consists of negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence in producing a single, indivisible injury.

**7. Automobiles § 41b—**

Evidence tending to show that defendant driver saw approaching him, when some 250 yards away, a truck with a red flashing light on its front and a fogging machine in the truck emitting chemical fog, which completely obscured the entire highway, that defendant driver slowed his vehicle but drove into the fog at a pretty good rate of speed and so continued on his right side of the highway until he was hit head-on by a truck traveling in the opposite direction, injuring plaintiff, a passenger in defendant's vehicle, is held sufficient to require the submission to the jury of the questions of such defendant's negligence and proximate cause. G.S. 20-140.

**8. Evidence § 3—**

It is a matter of common knowledge that the breeding and presence of anopheles mosquitoes constitute a menace to the health and comfort of persons exposed to them.

**9. Municipal Corporations § 7a—**

A municipal corporation has power to operate chemical fogging machines to destroy anopheles mosquitoes in the interest of health. G.S. 160-200(6).

**10. Municipal Corporations § 12—**

Where a municipal corporation procures liability insurance on a vehicle used by it in the performance of a governmental function, it waives its governmental immunity for the negligent operation of such vehicle to the extent of the amount of liability insurance. G.S. Chapter 160, Art. 15A.

**11. Automobiles § 34a—**

The emission from a vehicle of a chemical fog on a highway totally or materially obscuring the vision of the traveling public, without warning or signals except the noise of the machine and warning lights on the vehicle and fogging machine, which were completely obscured by the fog as to motorists approaching from its rear, is negligence, since injury to motorists on the highway may be reasonably foreseen.

**12. Automobiles § 41t—Evidence held sufficient to be submitted to jury on question of operation of fogging machine without adequate warning signals.**

Evidence tending to show that a municipality operated, for mosquito control, a fogging machine on its streets after sunset, that the machine had no warnings or signals to the traveling public except for the lights on the vehicle and the noise of its operation, that a vehicle approached from its rear, ran into the fog, turned to its left of the highway and sideswiped a vehicle standing on the shoulder and then collided head-on into another vehicle, traveling in the opposite direction, whose driver had slowed down but continued to drive into the fog, injuring plaintiff passenger, is held sufficient to be submitted to the jury on the questions of negligence and proximate cause of the municipality and its employees operating the fogging machine and the municipal truck, and motion to nonsuit on the ground of intervening negligence of the driver of the truck turning to his left on the highway should have been denied.

**13. Negligence § 6—**

The test of whether an intervening act of another insulates the primary negligence is whether such intervening act could have reasonably been foreseen and expected.

**14. Automobiles § 43—**

In an action by a passenger on a truck to recover for personal injuries received in a collision, whether the negligence of a municipality and its employees in operating a fogging machine on the highway after sunset without sufficient warnings and signals, was insulated by the negligence of the driver of one of the vehicles involved in the collision in continuing to drive into the fog and in turning to his left side of the highway, thus causing the head-on collision, *held* a question for the jury on the basis of whether, upon the facts then and there existing, the subsequent act of the driver and resulting injury could have been reasonably foreseen.

BOBBITT, J., dissents as to defendant Daniel.

APPEAL by plaintiff from *Moore, Clifton L., J.,* February Civil Term, 1958, of WASHINGTON.

At the close of plaintiff's evidence the court entered a judgment of involuntary nonsuit as to the defendants Town of Plymouth, Paul Basnight, Alfred Barnes and W. A. Daniel. Whereupon, the plaintiff took a voluntary nonsuit as to the defendant Herbert E. Manning.

From the judgment of involuntary nonsuit plaintiff appeals.

*Charles F. Blanchard and Norman & Rodman for Matthew Moore, plaintiff, appellant.*

*Jordan, Wright & Henson and W. L. Whitley for the Town of Plymouth, Paul Basnight and Alfred Barnes, defendants, appellees.*

*Bailey & Bailey for W. A. Daniel, defendant, appellee.*

PARKER, J.  This action arose out of a head-on motor vehicle collision, in which plaintiff was severely injured, between a pickup-truck driven by W. A. Daniel, in which plaintiff was riding in the rear as a passenger, and a truck loaded with junk, the truck and junk weighing some 11,000 pounds, operated by Herbert E. Manning. The collision occurred about 7:30 p. m. on Labor Day, 3 September 1956, on U. S. Highway No. 64 within the corporate limits of the Town of Plymouth, county seat of Washington County.

At the time and place a thick chemical fog was being created on the highway by a Ford pickup-truck, which had mounted on its rear a fogging machine. This Ford pickup-truck equipped with the fogging

machine was owned by the Town of Plymouth, and on this occasion was being driven slowly on its right-hand side of Highway No. 64 in an easterly direction. This truck was driven and the fogging machine was operated at the time by Paul Basnight and Alfred Barnes, employees of the Town of Plymouth. One of these men drove the truck, and the other operated the fogging machine. The fogging machine is an independent unit, and is of the jet type.

This is a description of the fogging machine and its operation, as testified to by Lon L. Joseph Wrightson, a witness for plaintiff: "It sprays with a white gasoline with Diesel oil and DDT in a 55-gallon barrel. The machine has a little five-gallon gas container on it. The machine burns white gas. The white gas burns the Diesel oil and the DDT. That is what causes the fog. It goes out the rear and it has a pipe that turns down toward the ground and the fog goes out through that. The fog is expelled by a pipe leading out of the back of the fogging machine. The fog comes out of a jet inside and goes into a 4" pipe. It is discharged out of the 4" pipe. . . . The fog is effective to kill mosquitoes. When the machine is cut off there is no fog being emitted. . . . The fog covers the area directly behind the truck first. It then gradually spreads out to cover the whole street or road."

The town's truck was equipped with a big seven-inch red blinker light on the front and headlights, and regular red taillights on the rear. The taillights and the truck cannot be seen by a motorist approaching the town's truck from the rear, when the fogging machine is discharging the chemical fog. This chemical fog or smoke that is discharged by the fogging machine is white or light. When it is fresh on the road, it is just a white sheet that cannot be seen through. It completely obscures the view ahead. At such a time an automobile approaching from the rear will have its lights reflected on the white fog. When the fogging machine is in operation on the truck, it makes a heavy roaring noise like a jet airplane flying. A witness for plaintiff testified such noise is constant, while the fogging machine is in operation, and can be heard a distance of three quarters of a mile or more.

A witness for plaintiff testified that he went to the scene of the collision. That in going he met the town truck with the fogging machine in operation discharging fog and smoke. He pulled off the road, and in less than a minute he was able to go on.

As this Ford pickup-truck, with the fogging machine on it in operation and creating on the highway behind it a thick chemical fog or smoke, was slowly proceeding on U. S. Highway No. 64 on its right side of the road after sunset on 3 September 1956, Fred G. Floyd, Sr. driving an automobile on the highway was approaching it from the

front, following Floyd's automobile some 150 to 200 feet behind and proceeding in the same direction was a pickup-truck driven by W. A. Daniel, in which plaintiff was a passenger, and approaching the town's pickup-truck from the rear was the truck heavily loaded with junk driven by Herbert E. Manning. As the town's pickup-truck and fogging machine approached Floyd, he drove off the concrete of the highway and stopped on its shoulder. When the truck with the fogging machine passed by Floyd on the shoulder of the highway, the smoke from the fogging machine closed in around him so he could not see anything. When Floyd started to pull off on the shoulder, he saw through his rear view mirror W. A. Daniel, who was some 150 to 200 feet behind him, slow down and start to pull off on the shoulder. The last view Floyd had of the Daniel pickup-truck before the smoke enveloped him, it looked as if the pickup-truck was about half on the shoulder of the highway and half on the highway.

After Floyd's automobile had been stopped a few seconds on the shoulder of the highway, and was enveloped in the smoke from the fogging machine, it was sideswiped by a heavily loaded truck driven by Herbert E. Manning, which hit the Floyd automobile behind the hinges of the left front door and stripped it to the rear. Manning's truck after sideswiping the Floyd automobile proceeded on and crashed head-on into Daniel's pickup-truck, demolishing the front end of Daniel's pickup-truck. In the collision plaintiff, who was lying down in the rear of Daniel's pickup-truck, was severely injured. After the wreck there was a distance of 50 to 60 feet between Floyd's automobile and Daniel's pickup-truck.

A. W. Peacock, a policeman of the Town of Plymouth and a witness for plaintiff, arrived at the scene of the wreck a few minutes after it occurred. When he arrived, the fog or smoke had entirely disappeared. The bumpers of the Daniel and Manning trucks had about disappeared, the trucks "were tied together" head-on. Manning's truck was half on the shoulder and half on the concrete. Daniel's truck's right side was off on the shoulder, and its left wheels were about a foot on the pavement. The collision occurred about 75 yards east of a curve on the highway. The shoulder of the highway at the scene of the wreck was wide enough for the trucks to have gotten completely off the highway.

Herbert E. Manning was called as a witness by plaintiff. He was in transit to Portsmouth, Virginia, and approached the town truck with the fogging machine in operation on U. S. Highway No. 64 from the rear. This is his testimony as to the wreck given on direct examination: "I recall going around a curve just inside the city limits. I recall going around the curve about 20 or 25 miles per hour. It was

not much more than that. As I rounded this curve I met this smoke. The smoke looked like a house on fire or something to me but it was all over the highway. I could not tell you what the color of the smoke was. Black or brown or gray, I could not tell. It was just smoke is all I could tell you. As I entered that curve I reckon I was the distance of four cars from this smoke when I first saw it. I did not see any lights ahead of me until I got in it. I slowed up when I saw this fog. Then I saw a light coming on my side. I pulled on my left-hand side to get away out of that man's way. That is when I run on the left-hand side of the road. I couldn't see nothing when I entered the fog. I was blind after I got in it. Couldn't see nothing. Couldn't see as far as here to you. Then is when I sideswiped one man and hit the other one. I did not hear any sirens out there at the time. I could see no light signals ahead of me. I was in the smoke then. I could not see nothing then. I did not see it until after it was over with." The concrete on the highway was 22 feet wide.

The deposition of plaintiff was read to the jury. He testified in substance as follows: He was lying down in the back of Daniel's pickup-truck with his head toward the cab. The truck began slowing up some, but it was still moving along at a pretty good speed. When the truck slowed down, he raised up on his knees, peeped out through the windshield, and saw that it was mighty foggy. He then lay back down, and the collision occurred.

The pickup-truck of the Town of Plymouth was not hit, neither did it hit any automobile. It went on down the highway without stopping. Apparently, Basnight and Barnes, who were operating the truck and the fogging machine, due to its noise, did not know of the collision between the Daniel and Manning trucks.

Plaintiff offered in evidence the following admissions from the joint answer filed by the Town of Plymouth, Paul Basnight and Alfred Barnes: That the pickup-truck owned by the town was used by the town in spraying chemical fog for the purpose of destroying mosquitoes and like insect life in the town. That the truck at the time of the collision in which plaintiff was injured was operated on U. S. Highway No. 64 by Basnight and Barnes, its employees, in the course of their employment.

Plaintiff offered in evidence this part of paragraph twenty of Daniel's answer: "This defendant admits that at a distance of about 250 yards he saw the cloud which had emitted from said fogging truck of defendant Town of Plymouth and, as he drew nearer, he saw said truck and the red flashing light on the front thereof."

CASE OF PLAINTIFF AGAINST W. A. DANIEL

Plaintiff's evidence tends to show that the truck and fogging machine owned and operated by the Town of Plymouth created at the time and place on the highway a chemical fog which totally obscured the view on the highway for some seconds after its emission from the fogging machine. The time was after sunset. Daniel admits in his answer that as he approached the front of the town's truck he saw at a distance of about 250 yards "the cloud which had emitted from said fogging truck of defendant Town of Plymouth and, as he drew nearer, he saw said truck and the red flashing light on the front thereof."

This Court said in *Bradham v. Trucking Co.*, 243 N.C. 708, 91 S.E. 2d 891: "The fog was an increased, though temporary, hazard to travelers upon the highway and, therefore, called for increased caution on their part."

A red light is recognized by common usage as a method of giving warning of danger, and a driver seeing a red light ahead is required in the exercise of due care to heed its warning. *Weavil v. Trading Post*, 245 N.C. 106, 95 S.E. 2d 533.

This Court said in *Chesson v. Teer Co.*, 236 N.C. 203, 72 S.E. 2d 407: "A motorist should exercise reasonable care in keeping a lookout commensurate with the increased danger occasioned by conditions obscuring his view."

"The precise degree or quantum of care properly exercisable by a motorist, or pedestrian, under varying atmospheric conditions, such as fog, smoke, dust, and the like, is ordinarily a question for the jury. Whether the exercise by a driver of reasonable care required a complete stop, a slowing down, or any other precautions dictated by the standard of ordinary prudence, is generally within the province of the jury to decide, in the light of all the surrounding facts and circumstances." 5A Am. Jur., Automobiles, §1070.

In *Caulder v. Gresham*, 224 N.C. 402, 30 S.E. 2d 312, the Court said: "The driver of the car in which plaintiff was riding was operating his automobile at 30 or 35 miles per hour, under conditions which made it impossible for him to see more than a few feet ahead. He was outrunning his lights. Although the jury found otherwise, that he was guilty of negligence seems to be apparent."

The defendant Daniel contends that in proceeding ahead into the fog he had the right to assume that the driver of a vehicle coming from the opposite direction will obey G.S. 20-148 giving to him at least one-half of the main travelled portion of the highway as nearly as possible, and to act on such assumption in determining his own manner of using the highway. "But this right is not absolute. It may be qualified by the particular circumstances existing at the time."

*Brown v. Products Co., Inc.,* 222 N.C. 626, 24 S.E. 2d 334; *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593; *Lucas v. White,* 248 N.C. 38, 102 S.E. 2d 387. Daniel had no absolute right to act upon such assumption for a reasonably prudent man might reasonably have anticipated that a motorist might be on the highway meeting him, and unable to keep safely on his right side of the road on account of the chemical fog. *Ewing v. Chapman,* 91 W. Va. 641, 114 S.E. 158.

The true and ultimate test of Daniel's conduct is this: What would a reasonably prudent person have done in the light of all the surrounding facts and circumstances?

G.S. 20-140, which statute the plaintiff alleges Daniel violated, required Daniel at all times to drive his pickup-truck with due caution and circumspection and at a speed or in a manner so as not to endanger or be likely to endanger any person or property. *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E. 2d 903.

It is well settled law in North Carolina that there can be more that one proximate cause of an injury. *Price v. Gray,* 246 N.C. 162, 97 S.E. 2d 844. This Court said in *Graham v. R. R.,* 240 N.C. 338, 82 S.E. 2d 346: "This alleged negligence, if established, continued to the moment of actual impact and so constituted a proximate cause of Graham's death. As stated by Seawell, J., in *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 2d 876: 'No negligence is "insulated" so long as it plays a substantial and proximate part in the injury.' "

"Concurrent negligence consists of negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence in producing a single, indivisible injury." *Yandell v. Fireproofing Corp.,* 239 N.C. 1, 79 S.E. 2d 223.

Daniel, seeing the chemical fog obscuring his view on the highway some 250 yards away, and as he drew nearer seeing a red flashing light on the front of the truck meeting him whose fogging machine was emitting the chemical fog, slowed down his pickup-truck but drove into the fog at a pretty good rate of speed, and so continued driving until he had a head-on collision with the truck driven by Manning. The trial court erred in not permitting the jury to decide whether Daniel in driving his pickup-truck into the fog on the highway as he did in the light of all the surrounding circumstances exercised that degree of care which a reasonably prudent man would have exercised under similar conditions, and whether he was not operating his pickup-truck in violation of G.S. 20-140, and if he failed to exercise such due care and failed to obey the mandate of G.S. 20-140, or failed in either such respect in operating his pickup-truck, whether such failure in both or either such respects proximately caused plaintiff's in-

juries, or was one of the proximate causes thereof.

## CASE OF PLAINTIFF AGAINST TOWN OF PLYMOUTH, PAUL BASNIGHT AND ALFRED BARNES.

The plaintiff alleges that the Town of Plymouth, according to the provisions of G.S., Ch. 160, Municipal Corporations, Art. 15A, by securing liability insurance covering the Ford pickup truck in this case had waived its governmental immunity from liability for any damage by reason of death, or injury to person or property proximately caused by the negligent operation of such truck by its employees acting within the course of their employment; such waiver of immunity being only to the extent of the amount of insurance so obtained. The joint answer filed by the Town of Plymouth, Basnight and Barnes avers that the Town of Plymouth has not waived its governmental immunity, except as provided in G.S., Ch. 160, Art. 15A. *Stephenson v. Raleigh,* 232 N.C. 42, 50 S.E. 2d 195, was decided prior to the enactment of this statute.

The evidence is clear that the Ford pickup-truck and the fogging machine were being operated at the time by the Town of Plymouth to destroy mosquitoes. It is a well known fact that the breeding and presence of anopheles mosquitoes constitute a menace to the health and comfort of persons exposed to them. See *Godfrey v. Power Co.,* 190 N.C. 24, 128 S.E. 485; *Pruitt v. Bethell,* 174 N.C. 454, 93 S.E. 945. The Legislature has given powers to municipalities to promote and to secure the lives and health of their residents by empowering them in G.S. 160-200(6) " . . . to define, prohibit, abate, or suppress all things detrimental to the health, morals, comfort, safety, convenience, and welfare of the people, and all nuisances and causes thereof."

Unquestionably the Town of Plymouth had a legal right to destroy mosquitoes detrimental to the health and comfort of its residents, but if in doing so in the instant case it injured plaintiff by actionable negligence in the operation of its truck and fogging machine, it cannot completely avoid liability to him by reason of the provisions of G.S., Ch. 160, Art. 15A. It is equally true that the traveling public is entitled to make a free and lawful use of U. S. Highway No. 64 passing through its corporate limits.

The Town of Plymouth, Basnight and Barnes are charged with negligence in part as follows:

"(a) They carelessly, negligently, and improperly carried on their spraying operations.

"(b) They failed to display adequate warning signs for motorists on said highway of the hazardous situation which they knew or should have known would be created by their spraying operations.

"(e) They failed to display a rear flashing light or flag, or carry any signal whatsoever to approaching rear traffic that the smoke it was emitting was impenetrable, blinding, and generally hazardous.

"(f) They continued said blinding operations after they saw, or should have seen, the defendant Daniel and the defendant Manning approaching.

"(h) They emitted fog on both sides of said truck and did not confine their spraying operations to the right side of said highway to avoid obscuring the view of motorists."

We have found no case with the same factual situation as that which gave rise to the present litigation: nor have counsel called our attention to such a case. However, the principles of law stated in the cases where steam or smoke has been emitted upon public highways by property owners to the hazard of persons using the highways seem to be applicable to the instant case.

*Pitcairn v. Whiteside*, 109 Ind. App. 693, 34 N.E. 2d 943, was an action for injuries by a motorist, who, while proceeding at a rate of 3 or 4 miles per hour, was struck from the rear by another automobile on the highway in the afternoon. The view of both motorists was obstructed by dense smoke created by fire started by railroad employees on the railroad right of way, which was about 160 feet from the highway. In affirming a judgment for damages to plaintiff the Court held that the negligence of the railroad's receivers was properly submitted to the jury. The Court in its opinion said: "There was a duty upon appellants to refrain from the creation or maintenance of any condition upon their right of way which subjected the traveling public, using public highways in the vicinity of such right of way, to unreasonable risks or conditions that were unnecessarily dangerous. A violation of this duty would constitute negligence. The evidence was sufficient to entitle the jury to determine whether or not appellants were guilty of negligence."

In *Lavelle v. Grace*, 348 Pa. 175, 34 A. 2d 498, 150 A.L.R. 366, it was held that the Crucible Steel Company of America from whose premises clouds of steam from a vent pipe about on a level with an adjacent highway are from time to time blown across the highway is liable for injuries resulting from a collision of automobiles on the highway in consequence of the obscuring of the view of the travelers by a cloud of steam. The Court said: "The steam carried by the wind across the bridge from the roof of the boiler house was not a mere background of the accident, but an active agency produced by the Crucible Steel Company which, by materially interfering with the vision of the operators of the two automobiles, was, if not the

sole, at least a concurrent or contributing, cause of the happening. The likelihood of such an occurrence was so obvious that it was negligence on the part of the company to persist in the maintenance of a condition which constituted a more or less constant menace to human life. The situation is not similar to that of a railroad company whose locomotives unavoidably belch forth steam and smoke and whose trains cause noise and dust in the vicinity of its tracks. . . ."

In *Oviatt v. Garretson*, 205 Ark. 792, 171 S.W. 2d 287, it was held that where a motorist traveling at high speed, through smoke from fire started on railroad right of way and permitted to spread to adjacent highway, emerged from smoke on wrong side of road and collided head-on with another automobile, whether negligence of railroad in permitting smoke to obscure highway was concurrent cause of collision was for jury.

The following decisions in the courts of other States imposed liability upon those responsible in cases in which persons were injured in automobile collisions caused by steam or smoke blown across the highway so as to impair the driver's vision. *Fisher v. Southern Pac. Co.*, 72 Cal. App. 649, 237 P. 787; *Bonner v. Standard Oil Co.*, 22 Ga. App. 532, 96 S.E. 573; *Southern Cotton Oil Co. v. Wallace*, 27 Ga. App. 415, 108 S.E. 624; *Farrer v. Southern R. Co.*, 45 Ga. App. 84, 163 S.E. 237; *Keith v. Yazoo & M. V. R. Co.*, 168 Miss. 519, 151 So. 916; *Pisarki v. Wisconsin Tunnel & Const. Co.*, 174 Wis. 377, 183 N.W. 164; *Ryan v. First Nat. Bank & Trust Co. of Racine*, 236 Wis. 226, 294 N.W. 832. In *Smith v. Edison Electric Illuminating Co.*, 198 Mass. 330, 84 N.E. 435, 15 L.R.A. (NS) 957, it was held the jury may find the turning by a manufacturer of steam into a sewer in such quantities that it escapes and envelopes a pedestrian on the sidewalk to be negligence and the proximate cause of an injury to the pedestrian through a fall on account of becoming bewildered by the steam, so as to render the manufacturer liable for the injury. In its opinion the Court said: "Nor can it be said that injury to travelers, in the manner complained of, ought not to have been apprehended as a reasonable result of suddenly pouring quantities of steam into the street. The jury might be convinced that bewilderment, a misstep and fall, were the natural consequences of such an act." See also 150 A.L.R., Annotation, p. 371, et seq., entitled "Emission of smoke or steam from private premises, or existence of other conditions thereon, as ground of liability of owner or occupant for results of an automobile accident in the highway."

Considering the evidence in the light most favorable to plaintiff (as we are required to do in passing on a motion for judgment of nonsuit, *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492), it is susceptible

of a legitimate and fair inference by a jury that had it not been for the chemical fog or smoke created on the highway after sunset by the Town of Plymouth and its employees Basnight and Barnes, who were acting within the course of their employment, totally or materially obscuring the vision of the traveling public at the time and place and interfering with the rights of the traveling public by creating a dangerous condition, with no warning or signals to the traveling public of such condition, except such as appeared from the truck and fogging machine and fog and its noise in operation, the head-on collision between the trucks of Daniel and Manning, in which plaintiff was injured, might not have occurred, and that under all the surrounding facts and circumstances the Town of Plymouth, Basnight and Barnes could have reasonably foreseen that some injury or harm would probably result from the chemical fog or smoke on the highway. If a jury should make such an inference from the evidence, the negligence of the Town of Plymouth, Basnight and Barnes was, therefore, one of the concurring causes which produced plaintiff's injury and without which the head-on collision between the trucks of Daniel and Manning would not have occurred, and it will be treated as one of the proximate causes, unless an independent agency has intervened in such a way as to break the chain of causation and to become the sole proximate cause. The Town of Plymouth, Basnight and Barnes contend that if they were negligent, the act of Manning in driving into the chemical fog or smoke was an independent intervening act of a third person which broke the chain of causation and that such act became and was the sole proximate cause of plaintiff's injuries.

"The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808. This is quoted with approval in *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E. 2d 673.

In *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E. 299, the Court said: "The test . . . is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected. . . . We think it the more correct rule that, except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act."

Considering the evidence most favorably in plaintiff's behalf, it

cannot be said as a matter of law that the Town of Plymouth, Basnight and Barnes could not reasonably foresee, in the light of the facts then and there existing as to the chemical fog or smoke on the highway created by them, the subsequent act of Manning and resultant injury.

The trial court erred in sustaining the motion for judgment of nonsuit made by the Town of Plymouth, Basnight and Barnes.

The judgment of involuntary nonsuit as to the defendants Town of Plymouth, Paul Basnight, Alfred Barnes and W. A. Daniel is

Reversed.

BOBBITT, J., dissents as to defendant Daniel.