JAMES ALLEN WHITE v. NELSON MOTE AND TOWN OF SILER CITY.

(Filed 20 June, 1967.)

1. Automobiles § 41t—

Evidence held to raise issue of negligence for jury in operating chemical fogging machine at nighttime without adequate warning or signals and in failing to provide the rear of the vehicle with lights as required by statute.

WHITE *v.* MOTE.

## 2. Automobiles § 11—

The failure to provide motor vehicles operating at night with the lights prescribed by statute is negligence *per se.* G.S. 20-129.1.

## 3. Automobiles § 38—

Plaintiff's statement that he was traveling 35 to 40 miles per hour in a 35 mile per hour speed zone cannot be considered an admission of excessive speed upon defendant's motion to nonsuit on the ground of contributory negligence, since the evidence must be taken in the light most favorable to plaintiff.

## 4. Automobiles § 39—

The distance traveled by a truck after being impelled forward by a vehicle colliding with its rear does not establish that the vehicle striking the truck was traveling at excessive speed when the driver of the truck testifies that after the collision the truck was running full throttle for a good distance before the driver regained control; an impact at a speed of 35 miles per hour is reasonably sufficient to bend the wheel of a truck.

## 5. Negligence § 26—

Nonsuit for contributory negligence is proper only when plaintiff's own evidence establishes this defense so clearly that no other conclusion may be reasonably drawn therefrom, and when the evidence presents diverse inferences, the issue is for the jury.

## 6. Automobiles § 42d—

The failure of a driver to see a chemical fogging machine in time to avoid running into the rear of such machine on a dark night cannot constitute contributory negligence as a matter of law when plaintiff was not exceeding the statutory speed limit. G.S. 20-141(e).

## 7. Same—

Where plaintiff testifies that immediately he saw the vehicle upon which defendant's chemical fogging machine was being operated he took his foot off the gas but struck the rear of the vehicle before he could put his foot on the brake, the question of contributory negligence in following too closely does not arise, and the evidence does not establish contributory negligence as a matter of law in failing to keep a proper lookout, since a motorist will not be held to the duty of bringing his vehicle to an immediate stop on the sudden arising of a dangerous situation which he could not have reasonably anticipated.

## 8. Municipal Corporations § 5—

A municipal corporation, in operating a chemical fogging machine for the control of insects, is engaged in a governmental function.

## 9. Municipal Corporations § 10—

Where a municipal corporation procures liability insurance on a vehicle used by it in the performance of a governmental function, it waives its governmental immunity for the negligent operation of such vehicle to the extent of the liability insurance thereon, unless the municipal corporation takes affirmative action against waiver. G.S. 160-191.1.

**10. Insurance § 3—**

Laws in effect at the time of the issuance of a policy of insurance become a part of the insurance contract, and provisions in the policy contrary to the statute are void.

**11. Insurance § 57—**

The fact that a policy of liability insurance issued to a municipality refers to the insured in its text as an individual rather than a municipal corporation, is immaterial.

**12. Insurance § 54—**

The fact that a policy defines the vehicle insured as a "garbage truck" and the accident in suit occurred while the vehicle was being used for the transportation and operation of a chemical fogging machine, is immaterial, the vehicle being identified as to make, year, and model and identification number, and there being no clause excluding liability if the vehicle were used for any purpose other than a garbage truck.

**13. Insurance § 3—**

Policies of insurance are to be liberally construed in favor of insured.

APPEAL by defendants from *Hobgood, J.,* September 1966 Civil Session of CHATHAM.

Civil action to recover for personal injuries and property damage suffered by plaintiff when his automobile, driven by him, collided with the rear of a fogging machine being operated at the time by defendant Mote and owned by defendant Town of Siler City.

The undisputed physical evidence shows that shortly after 9:00 P.M. on 25 May 1965 plaintiff left a service station operated by him and proceeded in an easterly direction on East Third Street (also U.S. 64A) at about a speed of 35 to 40 miles per hour. He continued in this direction until he collided with the rear of the fogging truck which was operating in the same direction as plaintiff on East Third Street, on the right hand side of the road, at a speed of approximately 8 miles per hour.

The section of road on which the collision occurred is a straight stretch for approximately one mile without noticeable obstructions. The collision occurred near the middle of this stretch. Other than the vehicles involved in the collision, there was no traffic on the road at the time. It was night and dark and the weather was cloudy. Streetlights were interspersed along the road at such a distance that the illumination therefrom did not overlap, but instead left an area of relative darkness midway between them.

Plaintiff testified in part as follows:

"As I went down this road I observed no traffic. I didn't see anything until I did see this fog. I saw the fog and just as I saw the fog, I just had time to let off the gas and ran into the

back of the truck. It wasn't but just a split second from the time I saw the fog until I struck the truck.

"As to what I referred to as fog, it is just a white mist, a real heavy white mist. It is something similar to a fog. It is heavier than fog . . . and it is just impossible to see. As I approached the fog from some distance back, I did not see the fog, I didn't see a thing. I was looking straight ahead and I have 20/20 vision, do not and have never worn glasses. The headlights on my car were both good.

". . . I had my lights on high beam and I did not hear any unusual noise before I hit the truck. . . . I didn't have the radio on in my car and I don't recall hearing any unusual noise at all. The temperature was warm and I had my windows down on the driver's side. . . .

"On May 25, 1965, as I was going down the highway, I suddenly saw fog, and I just hit it. There was no light on the back of the truck, or on top that could be seen. There were no reflectors visible from the rear — if there were, I did not see them for the smoke. . . .

"When I first observed the fog was when I first took my foot off the gas; I went to go for the brake but I didn't have time and just as I saw the fog, I ran right into it.

". . . As to whether I am indicating to the court and the jury that the street lights were not burning on that night, no, sir, I am not saying they were not burning, but what I am trying to say is that it was dark there where I had my wreck."

Plaintiff's witness, Henry Kimball, testified that he was a police officer with the Town of Siler City on 25 May 1965 and had occasion to investigate the wreck; that when he observed the truck after the wreck it had only one light on it, which could have been a reflector; that there were two small lights and some reflectors, but they weren't burning at the time. He further testified that he had traveled behind the fogging truck when it was in operation on occasions prior to the collision. He stated: "As to whether or not it was difficult to see the spray or the truck, it was difficult to see lots of times. . . . I made a report on the accident in which it is stated that the weather was cloudy. . . . I didn't see any lights but one small light on the left hand side of the spray truck, it could have been a reflector or flare lights, I won't say."

Plaintiff introduced in evidence an automobile insurance policy issued to the Town of Siler City by Insurance Company of North America. The coverage period as shown on the policy was from 3 August 1964 to 3 August 1965, and the policy purported to cover,

among others, a 1955 International 2-ton garbage truck. Mrs. Margaret Vestal, Clerk and Treasurer of the Town of Siler City, testified:

> "The original policy describes and includes one 1955 International two-ton garbage truck, Number R 16240157, and it also includes a 1942 Ford street cleaner bearing certain numbers. There is also a motor vehicle registration certificate issued from the Department of Motor Vehicles, State of North Carolina, being #3648583, which describes an International truck with the number, serial identification number, that is, of R 16240157. That is the same number which appears on the policy following the words 'International two-ton garbage truck.' This is the truck that the fogging machine is now and has for some years been mounted on and used by the Town of Siler City. . . .
>
> ". . . I do not have any source of knowledge or information relative to the governing Board of the Town of Siler City taking any affirmative action with respect to the tort liability other than the procuring of this insurance, if it does that."

Defendant Nelson Mote testified that he was operating the truck with an insecticide sprayer on it as a regular part of his job with the Town of Siler City at the time of the collision; that the fog which was emitted from the machine on the back of the truck came from a nozzle which was pointed down and to the right of the truck. "The Spray machine makes a whistling noise; it sounds a little like a jet airplane but not as much. It makes a noise you can hear for probably a block if you are standing out. . . . There were three lights on the rear of the truck, a turn signal on each side of the body, and one tail light. There was one reflector on the truck; I put it there myself. . . . There were three lights on the rear. Two of them were left and right turn signals which didn't burn when you were driving down the highway unless you indicated a right turn or a left turn. I had not indicated a right or a left turn anywhere from the funeral home down to where I was hit; so neither of these two tail lights were burning for the last several minutes prior to being hit. The only light on the rear of the truck was just the average tail light like is on a truck, probably three inches in diameter, with one bulb in it, a double contact bulb. . . . As to whether you could see the fog or not, and whether it wasn't a usual thing that cars would run up and blow at me and fuss because they couldn't see good, not every night, but I have had them to run up and blow. Sometimes this was done frequently, and was partly because I drove along slowly, five to eight or ten miles an hour. This foggy substance makes

seeing very difficult, just like any fog, and it is difficult to see in or see through it at certain times. The only light I had on the back was the small light at the rear of the truck. . . . I told you back in July of last year that it was not raining but that it might be a little foggy or cloudy; that's what I said and is correct. And it's possible I said that White couldn't see the tail light because of the fog."

Curtis Head, another employee of the Town of Siler City, testified that he was riding on the passenger side of the truck operated by Mote when the wreck occurred. He stated that there were turn signal lights on each side of the truck, reflectors on each side and one tail light. He testified further: "On this particular night, the fog was not spreading over the entire road, not at all times, but sometimes the wind might come and whirl it back to the left side, but mostly that night, it was going south. The fog is gray in color and can be seen from the light of the street lights. You can see it anywhere from 300 to 400 feet. After you pass along the road, the fog will remain anywhere from 300 to 350 feet, depending upon the wind. On this night, it was remaining on the road about 350 feet behind the truck. . . . I got out of the truck and went back to Mr. White's car. He was lying over there on the right hand side of the road and I walked up to him and said: 'Are you hurt,' and he said: 'What are you all doing, standing here in the middle of the road and no lights.' I said: 'We have got lights.' "

Defendants offered evidence tending to show that the right rear wheel of the truck was knocked sideways under the chassis of the truck and that the spray equipment was off the truck some 100 feet from where the truck stopped.

Issues of negligence, contributory negligence, and damages were submitted to the jury and answered in favor of plaintiff. Upon the rendition of the verdict of the jury, defendants moved for judgment *non obstante veredicto,* and also moved that the verdict be set aside. Both motions were denied and judgment was entered on the verdict. Defendants appealed.

*Andrews & Stone for plaintiff.*

*T. F. Baldwin, City Attorney, and Miller, Beck and O'Briant for defendants.*

BRANCH, J. Defendants contend the trial court erred in overruling their motions for nonsuit when plaintiff rested and at the close of all the evidence. In support of this contention defendants argue: (1) That there was not sufficient evidence of actionable negligence to justify submitting the issue to the jury, and (2) plaintiff

was guilty of contributory negligence as a matter of law. Defendants further contend the action was barred in that defendant Town of Siler City had not waived its immunity from tort liability while performing a governmental function.

Plaintiff alleged defendants were negligent in that:

"(a) They failed to display adequate warnings, signs or indications for motorists on said street of the hazardous conditions which they knew or should have known would be created by their spraying operations.

(b) They failed to display a rear flashing light or provide any signal whatsoever to approaching rear traffic while knowing that the fog which was being emitted was impenetrable, blinding, and generally hazardous.

(c) They failed to exercise that degree of care in the operation of said vehicle required of a reasonably prudent person under the circumstances then and there existing.

(d) They failed to exhibit a red light plainly visible under normal atmospheric conditions from a distance of five hundred feet to the rear of such vehicle, as required by North Carolina General Statutes 20-129(d).

(e) They negligently failed to equip said truck with two light reflectors, one on each side, as required by North Carolina General Statute 20-129.1."

Considering the evidence in support of allegations (a), (b) and (c), we find this Court considered a similar situation in the case of *Moore v. Plymouth*, 249 N.C. 423, 106 S.E. 2d 695, where the municipality operated a fogging machine on its streets after sunset without warning or signals except for the lights on the vehicle and the noise of the operation, and a vehicle approached from its rear, ran into the fog, turned to its left of the highway, sideswiping a vehicle standing on the shoulder, and then colliding with another vehicle traveling in the opposite direction, which was also driving in the fog. Holding that the evidence was sufficient to be submitted to the jury on the question of negligence and proximate cause as to the municipality and its employees, this Court, speaking through Parker, J. (now C.J.), stated:

"Considering the evidence in the light most favorable to plaintiff (as we are required to do in passing on a motion for judgment of nonsuit, *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492), it is susceptible of a legitimate and fair inference by a jury that had it not been for the chemical fog or smoke created on the highway after sunset by the Town of Plymouth and its

employees Basnight and Barnes, who were acting within the course of their employment, totally or materially obscuring the vision of the traveling public at the time and place and interfering with the rights of the traveling public by creating a dangerous condition, with no warning or signals to the traveling public of such condition, except such as appeared from the truck and fogging machine and fog and its noise in operation, the head-on collision between the trucks of Daniel and Manning, in which plaintiff was injured, might not have occurred, and that under all the surrounding facts and circumstances the Town of Plymouth, Basnight and Barnes could have reasonably foreseen that some injury or harm would probably result from the chemical fog or smoke on the highway."

Here, plaintiff's evidence allows legitimate inferences which might be drawn therefrom by the jury tending to show that had it not been for the chemical fog created by defendants after sunset, materially obscuring the vision of plaintiff and interfering with his right and the right of the traveling public by creating a dangerous condition, without warnings or signals to warn the public of such condition, except such as appeared from the truck, fog and fogging machine and its noise of operation, the collision which caused plaintiff's injuries and property damage might not have occurred, and under the circumstances defendants could or should have reasonably foreseen that some injury or harm would probably result from the chemical fog or smoke on the highway. Further, considering the evidence in the light most favorable to plaintiff, as we are required to do in passing on a motion for nonsuit, *Moore v. Plymouth, supra,* there is sufficient evidence for the jury to find that the defendant Town of Siler City failed to equip its truck with two reflectors on the rear, one at each side, in violation of G.S. 20-129.1, and that defendant Town failed to equip its truck with a rear light of a type which has been approved by the Commissioner of Motor Vehicles, and which exhibits a red light plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of such vehicle, in violation of G.S. 20-129(d).

It is stated in *Scarborough v. Ingram,* 256 N.C. 87, 122 S.E. 2d 798: "The statutes prescribing lighting devices to be used by motor vehicles operating at night (G.S. 20-129 and 129.1) were enacted in the interest of public safety. . . . A violation of these statutes constitutes negligence as a matter of law. *Bridges v. Jackson,* 255 N.C. 333; *Lyday v. R. R.,* 253 N.C. 687, 117 S.E. 2d 778."

We must agree with the trial judge that there was sufficient evi-

dence of actionable negligence on the part of defendants to justify submitting the issue of negligence to the jury.

The more troublesome question is whether plaintiff was guilty of contributory negligence as a matter of law. Defendants so contend on the grounds that (a) plaintiff operated his automobile at a speed greater than was reasonable under existing conditions, (b) he followed defendants' vehicle too closely, and (c) he failed to keep a proper lookout and failed to exercise ordinary care.

There is not sufficient evidence of excessive speed to show contributory negligence as a matter of law. Defendants cannot rely on plaintiff's statement that he was going "35 to 40 miles per hour" to sustain their contention that he was guilty of contributory negligence as a matter of law, as the evidence shows this was in a residential-business area, and, taking the statement in the light most favorable to plaintiff, we must take the speed to be the lawful 35 miles per hour in a residential area. Further, the physical facts do not establish clearly that no other conclusion might be drawn except a conclusion of excessive speed. Plaintiff testified he did not have time to apply brakes or to slow down between the time he saw the fog and the time he collided with defendants' truck. The impact at a speed of 35 miles per hour reasonably could have been sufficient to bend the wheel of the truck and loosen the equipment which was described as being "relatively permanently affixed to the truck." The driver testified that after the collision "the truck was running full throttle a good distance down the road before I regained control of it." Thus, the driver's testimony would explain the distance the truck traveled and the fact that the equipment was some distance from the place where the truck was stopped.

"A nonsuit on the ground of contributory negligence will be granted only when the plaintiff's evidence establishes the facts necessary to show contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom." *Waters v. Harris,* 250 N.C. 701, 110 S.E. 2d 283; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19.

The evidence presents diverse inferences as to excessive speed on the part of plaintiff, and, on this point, a question of fact is presented for the jury.

Defendants contend the fact that plaintiff was the following driver involved in a rear-end collision affords sufficient evidence to make him guilty of contributory negligence as a matter of law. To support this contention defendants cite *McKinnon v. Motor Lines,* 228 N.C. 132, 44 S.E. 2d 735; *Morris v. Transportation Co.,* 235 N.C. 568, 70 S.E. 2d 845; *Smith v. Metal Co.,* 257 N.C. 143, 125 S.E. 2d

377. Both the *McKinnon* and *Morris* cases were decided prior to the amendments to G.S. 20-141(e) by the 1953 General Assembly, which added the proviso: "that the failure or inability of a motor vehicle operator who is operating such vehicle within the maximum speed limits prescribed by G.S. 20-141(b) to stop such vehicle within the radius of the lights thereof or within the range of his vision shall not be considered negligence *per se* or contributory negligence *per se* in any civil action, but the facts relating thereto may be considered with other facts in such action in determining the negligence or contributory negligence of such operator."

Further, in *Smith v. Metal Co., supra,* and *McKinnon v. Motor Lines, supra,* the plaintiffs continued to drive some distance after being "blinded" by the lights of another vehicle before striking the parked or slowly moving vehicles without attempting to stop their respective vehicles. The Court held this was contributory negligence. Here, plaintiff testified: "When I first observed the fog was when I first took my foot off the gas; I went to go for the brake but I didn't have time. . . ." The distinction in the cases relied on by defendants and this case is that in the instant case plaintiff immediately acted upon seeing the danger, while in the cases cited by defendants the plaintiffs continued in the same course of action for some time and distance after being faced with apparent danger.

Defendants also rely on the case of *Burnett v. Corbett,* 264 N.C. 341, 141 S.E. 2d 468, which holds that the mere fact of a collision with the vehicle ahead offers some evidence that the motorist in the rear was not keeping a proper lookout or that he was following too closely. "The following driver is not, however, an insurer against rear-end collisions for, even when he follows at a distance reasonable under the existing conditions, the space may be too short to permit a stop under any and all eventualities." *Beanblossom v. Thomas,* 266 N.C. 181, 146 S.E. 2d 36. *Burnett v. Corbett, supra,* is bottomed on a violation of G.S. 20-152(a) which appeared from the plaintiff's own testimony. Here, there is no evidence which would tend to show that plaintiff followed any vehicle more closely than was reasonable and prudent under the circumstances.

The more serious question raised by the rear-end collision is whether plaintiff was keeping a proper lookout. We recognize the rule that "One who operates a motor vehicle must be reasonably vigilant and anticipate the use of the highways by others. A failure to maintain a reasonable lookout is negligence." *Clark v. Emerson,* 245 N.C. 387, 95 S.E. 2d 880. But he will not be held to the duty of being able to bring his automobile to an immediate stop on the sudden arising of a dangerous situation which he could not have rea-

sonably anticipated. *Privette v. Lewis,* 255 N.C. 612, 122 S.E. 2d 381. In this connection plaintiff testified that he was looking straight ahead while operating his automobile, which was equipped with good headlights. He further stated that he heard no unusual noise.

Plaintiff's witness Henry Kimball also testified: "As to whether or not it was difficult to see *the spray or the truck,* it was difficult to see lots of times." (Emphasis ours)

Plaintiff's evidence would permit a jury to find that he was driving his automobile at nighttime at a legal rate of speed, with good headlights and while keeping a proper lookout; that the atmospheric conditions were such that the fog or smoke hung closely to the truck so that neither the fog nor the truck was apparent or visible to plaintiff until it was too late for him to avoid a collision with the truck. There being evidence of contributory negligence on the part of plaintiff and also competent evidence from which the jury could reasonably reach a contrary conclusion, we hold that the plaintiff was not guilty of contributory negligence as a matter of law. *Waters v. Harris, supra.*

Defendant Town of Siler City was engaged in a governmental function at the time of the accident. *Moore v. Plymouth, supra.* The final question presented is whether the Town of Siler City had waived its governmental immunity prior to the date of the accident by procuring the insurance policy introduced in evidence by plaintiff in the absence of the jury.

G.S. 160-191.1 provides:

> "The governing body of any incorporated city or town, by securing liability insurance as hereinafter provided, is hereby authorized and empowered, but not required, to waive its governmental immunity from liability for any damage by reason of death, or injury to person or property, proximately caused by the negligent operation of any motor vehicle by an officer, agent or employee of such city or town when acting within the scope of his authority or within the course of his employment. Such immunity is waived only to the extent of the amount of the insurance so obtained. Such immunity shall be deemed to have been waived in the absence of affirmative action by such governing body."

Where a municipal corporation procures liability insurance on a vehicle used by it in the performance of a governmental function, it may, but is not required to, waive its governmental immunity for the negligent operation of such vehicle to the extent of the amount of liability insurance. *Moore v. Plymouth, supra; Seibold v. Kin-*

*ston,* 268 N.C. 615, 151 S.E. 2d 654. In regard to the defendants'
contention that the municipality had not waived governmental im-
munity, the statute (G.S. 160-191.1) clearly states: "Such immunity
shall be deemed to have been waived in the absence of affirmative
action by such governing body." Laws in effect at the time of issu-
ance of a policy of insurance become a part of the contract, and
provisions in the policy contrary to the statute are of no effect.
*Brown v. Casualty Co.,* 241 N.C. 666, 86 S.E. 2d 433.

In the instant case the uncontradicted evidence is that prior to
May 25, 1965 defendant Town of Siler City secured liability insur-
ance on one 1955 International 2-ton garbage truck, No. R 16240157,
which was the same truck involved in the accident. Further, that no
affirmative action relative to tort liability was taken by the Town of
Siler City other than the procuring of the insurance. The judgment
recovered was within the limits of the policy issued, and the policy
was in effect on 25 May 1965.

We see no merit in defendant's contention that the policy issued
to it has language which refers to an individual rather than a mu-
nicipality. It is clear that the policy was issued to defendant Town
of Siler City, a municipal corporation, and that the intent of the
parties was to insure the municipality against tort liability within
specified limits. "An insurance policy is only a contract and the in-
tention of the parties is the controlling guide in its interpretation."
*Gaulden v. Insurance Co.,* 246 N.C. 378, 98 S.E. 2d 355. The policy
issued to defendant Town of Siler City contains in Sec. 4 of the
Declarations a coded "Liability Classification" designating the in-
sured vehicle as one to be used for commercial purposes. Part III
of the Insuring Agreement reads in part as follows:

> "III. Definition of Insured: (a) With respect to the insur-
> ance for bodily injury liability and for property damage liabil-
> ity the unqualified word 'insured' includes the named insured
> and, *if* the named insured is an individual, . . ."

The above wording clearly contemplates insurance on entities other
than individuals. Nor should defendants be absolved from liability
because the truck involved was described as a garbage truck. The
vehicle was identified as to make, year, model and identification num-
ber. There can be no mistake as to its identity.

Since policies of insurance are prepared by the insurer, they are
liberally construed in favor of the insured, and strictly construed
against the insurer. *Barker v. Insurance Co.,* 241 N.C. 397, 85 S.E.
2d 305.

Surely, in this case it was not the intent of either party that an

insurance policy solely for the benefit of an individual be issued to a municipal corporation as the insured. Further, had it been the intent of the insurer to escape liability because of the description or use of a named vehicle, the excluded description or use could have and should have been written into the policy.

The judgment of the court below is
Affirmed.