Peter Jones FIELD, Petitioner,

v.

SHERIFF OF WAKE COUNTY, NORTH CAROLINA, and Wake County Probation Office, Respondents.

No. 86–18–HC.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Aug. 1, 1986.

On Motion for Reconsideration
Sept. 23, 1986.

Gary Lester Presnell, Raleigh, N.C., for petitioner.

Ike Avery, Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C., for respondents.

## ORDER

JAMES C. FOX, District Judge.

This matter is before the court on the petition of Peter Jones Field, a person in state custody, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The undisputed facts of the case are as follows:

Upon his plea of guilty in the Wake County Superior Court on August 21, 1984, Field was convicted of driving while impaired in violation of N.C.Gen.Stat. § 20–138.1.[1] While so driving, Field was involved in an accident resulting in injury to two persons. One victim suffered injuries which included a fractured left knee, torn ligaments and tendon damage requiring surgery and resulting in permanent partial disability, as well as a cut requiring 29 stitches to close. The other victim sustained a blow to the head and a broken nose. The broken nose required surgery to

---

1. Field also pleaded guilty to a stop sign violation; this conviction is not relevant to the instant petition.

straighten the septum, during which time the doctors found a hole in the membrane and were required to perform grafts to close it.

The trial judge, authorized by N.C.Gen. Stat. § 20–179 to impose five levels of punishment depending upon statutorily enumerated aggravating and mitigating factors, found one grossly aggravating factor—that serious injury to another person had been caused by Field's impaired driving—and imposed Level Two punishment.[2] Field was sentenced to one year imprisonment. Execution of sentence was suspended for three years and Field was placed on probation. A special condition of probation required Field to serve seven days in jail, as mandated by N.C.Gen.Stat. § 20–179. Field is currently "in custody of the State" by virtue of the fact that he is subject to supervised probation.

Field contends his rights were violated by the sentencing scheme of N.C.Gen.Stat. § 20–179. Specifically, Field contends that he has a right under the sixth and fourteenth amendments to the Constitution of the United States to a jury trial on the sentencing factor of "serious personal injury." Field presented this contention in his direct appeals to the North Carolina Court of Appeals and the North Carolina Supreme Court. He therefore has exhausted his state remedies as required by 28 U.S.C. § 2254. Respondents have moved to dismiss Field's petition, and the matter is now ripe for disposition.

A preliminary discussion of the North Carolina statutes pursuant to which Field was convicted and sentenced is necessary to understand the respective contentions of the parties. N.C.Gen.Stat. § 20–138.1 defines the offense of driving while impaired (DWI) and provides two methods of proof of the offense as follows: (1) driving a vehicle; (2) upon any highway, street, or public vehicular area within the State; (3) while under the influence of an impairing substance, N.C.Gen.Stat. § 20–138.1(a)(1); or, (1) driving a vehicle; (2) upon a highway, street, or public vehicular area; (3) after having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more, N.C.Gen.Stat. § 20–138.1(a)(2). *State v. Shuping*, 312 N.C. 421, 323 S.E.2d 350 (1984). The jury is responsible for finding facts which support the conclusion that these elements have been proven beyond a reasonable doubt by the State. Once the offense is so proved, the jury has no further responsibility; it does not find aggravating or mitigating circumstances, or the existence of grossly aggravating factors. The jury only determines guilt or innocence of DWI. N.C.Gen.Stat. § 20–138.1.

Once guilt is determined by the jury, the jury is discharged. The judge then is required to hold a sentencing hearing pursuant to N.C.Gen.Stat. § 20–179(a). At this sentencing hearing the prosecutor "must" present all *grossly aggravating* and *aggravating* factors of which he is aware. N.C.Gen.Stat. § 20–179(a). The judge "must first determine" whether there are any *grossly aggravating* factors in the case. N.C.Gen.Stat. § 20–179(c). The *grossly aggravating* factors include:

**2.** A Level One punishment subjects a defendant to a prison term of no less than 14 days and no more than 24 months, and he may be fined up to $2,000.

A Level Two punishment subjects a defendant to a prison term of no less than 7 days and no more than 12 months, and he may be fined up to $1,000.

A Level Three punishment subjects a defendant to a prison term of no less than 72 hours and no more than 6 months, and he may be fined up to $500 (the term of imprisonment *must* be suspended and certain conditions of probation imposed, as enumerated in § 20–179(i)).

A Level Four punishment subjects a defendant to a prison term of no less than 48 hours and no more than 120 days, and he may be fined up to $250 (the term of imprisonment *must* be suspended and certain conditions of probation imposed, as enumerated in § 20–179(j)).

A Level Five punishment subjects a defendant to a prison term of no less than 24 hours and no more than 60 days, and he may be fined up to $100 (the term of imprisonment *must* be suspended and certain conditions of probation imposed, as enumerated in § 20–179(k)).

"(1) A single conviction for an offense involving impaired driving, if the conviction occurred within seven years of the date of the offense for which the defendant is being sentenced.

(2) Driving by the defendant while his driver's license was revoked under G.S. 20–28, and the revocation was an impaired driving revocation under G.S. 20–28.2(a).

(3) Serious injury to another person caused by the defendant's impaired driving." [3]

If only one *grossly aggravating* factor is found to be present, as in the case at bar, then Level Two punishment *must* be imposed.[4] As previously stated, a Level Two punishment requires not less than 7 days and not more than 12 months in jail and a fine of up to $1,000.00. N.C.Gen.Stat. § 20–179(h).

As previously indicated, defendant Field contends that his constitutional right to a trial by jury was denied by N.C.Gen.Stat. §§ 20–138.1 and 179, in that the trial judge was permitted to consider as an aggravating factor serious injury to another person allegedly caused by Field's impaired driving. Respondents contend that the aggravating factor before the trial judge in determining the sentence was not an element of the offense, its consideration for purposes of sentencing being a function for the judge and therefore not susceptible to constitutional challenge based upon the sixth amendment right to a jury trial. Indeed, the North Carolina Supreme Court in the case of *State v. Denning*, 316 N.C. 523, 342 S.E.2d 855 (1986), has held that the trial judge's consideration of a separate enumerated aggravating factor—conviction for a similar offense within seven years (an aggravating factor calling for Level Two punishment)—was not susceptible to constitutional challenge. It is upon the foregoing contentions that the legal issues in this petition are presented.

It is settled law that the fourteenth amendment guarantees a right of jury trial in all state criminal cases which, were they tried in a federal court, would come within the sixth amendment's guarantee of trial by jury, and that the penalty authorized for a particular crime is of major relevance in determining whether it is a serious one subject to the mandates of the sixth amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968). The facts and opinion in *Duncan* are instructive in the instant case. In *Duncan*, the defendant was convicted of simple battery, a misdemeanor under Louisiana law punishable by a maximum of two years imprisonment and a $300 fine. Upon conviction, Duncan was sentenced to 60 days in prison and fined the sum of $150. Although Duncan had requested a jury trial, such was denied him because the Louisiana Constitution granted jury trial only in cases where capital punishment or imprisonment at hard labor could be imposed. 391 U.S. at 146, 88 S.Ct. at 1445. In holding that the sixth and fourteenth amendments secured to Duncan the right of a jury trial in the state criminal prosecution, the Court commented on the right to jury trial; such comments this court now finds appropriate to republish:

"The history of trial by jury in criminal cases has been frequently told. It is sufficient for present purposes to say that by the time our Constitution was written, jury trial in criminal cases had been in existence in England for several centuries and carried impressive credentials traced by many to Magna Carta. Its preservation and proper operation as a protection against arbitrary rule were among the major objectives of the Declaration and Bill of Rights of 1689 . . . .

---

**3.** This opinion deals *solely* with the constitutionality of N.C.Gen.Stat. § 20–179 as it relates to serious injury to another person caused by the defendant's impaired driving.

**4.** The existence of two or more of the grossly aggravating factors, or the existence of other circumstances delineated in N.C.Gen.Stat. § 20–179(c), mandates the imposition of Level One punishment.

"Jury trial came to America with English colonists, and received strong support from them. Royal interference with the jury trial was deeply resented.... The Declaration of Independence stated solemn objections to the King's making 'Judges dependent on his Will alone, for the tenure of their offices, and the amount and payment of their salaries,' to his 'depriving us in many cases, of the benefits of Trial by Jury,' and to his 'transporting us beyond Seas to be tried for pretended offenses.' The Constitution itself, in Art. III, § 2, commanded:

" 'The Trial of all Crimes, except in Cases of Impeachment, shall be by jury; and such Trial shall be held in the State where the said Crimes shall have been committed.' "

Objections to the Constitution because of the absence of a bill of rights were met by the immediate submission and adoption of the Bill of Rights. Included was the Sixth Amendment which, among other things, provided:

" 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.' "

"The constitutions adopted by the original States guaranteed jury trial. Also, the constitution of every State entering the Union thereafter in one form or another protected the right to jury trial in criminal cases.

"Even such skeletal history is impressive support for considering the right to jury trial in criminal cases to be fundamental to our system of justice, an importance frequently recognized in the opinions of this Court....

"Jury trial continues to receive strong support. The laws of every State guarantee a right to jury trial in serious criminal cases; no State has dispensed with it; nor are there significant movements underway to do so....

"The guarantees of jury trial in the Federal and State Constitutions reflect a pro-

found judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States....

"... It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses. But the penalty authorized for a particular crime is of major relevance in determining

whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment.... The penalty authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments,' ... of the crime in question. In *Clawans* [*District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937)] the defendant was jailed for 60 days, but it was the 90–day authorized punishment on which the Court focused in determining that the offense was not one for which the Constitution assured trial by jury. In the case before us the Legislature of Louisiana has made simple battery a criminal offense punishable by imprisonment for up to two years and a fine. The question, then, is whether a crime carrying such a penalty is an offense which Louisiana may insist on trying without a jury.

"We think not. So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions. There is no substantial evidence that the Framers intended to depart from this established common-law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications. These same considerations compel the same result under the Fourteenth Amendment. Of course the boundaries of the petty offense category have also been ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case, it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This

process, although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little.

"In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we are counseled ... to refer to objective criteria, chiefly the existing laws and practices in the Nation.... We need not, however, settle in this case the exact location of the line between petty offenses and serious crimes. It is sufficient for our purposes to hold that a crime punishable by two years in prison is, based on past and contemporary standards in this country, a serious crime and not a petty offense. Consequently, appellant was entitled to a jury trial and it was error to deny it."

*Duncan* 391 U.S. at 151–162, 88 S.Ct. at 1448–1454 (citations and footnotes omitted).

■ The foregoing opinion establishes, *inter alia*, that it is the punishment to which a criminal defendant is exposed (as opposed to his actual sentence) which, among other considerations, determines if the crime is one which entitles him to a jury trial in the state court under the sixth and fourteenth amendments. Field applies this criteria, in and of itself, to a Level Two punishment under N.C.Gen.Stat. § 20–179, and concludes that he, being subject to imprisonment up to one year, was entitled to a jury trial on all factual issues which could have been the predicate for imposition of such sentence, including the existence of a grossly aggravating factor (in the instant case, serious injury to person resulting from impaired driving). Field concedes that without the existence of the grossly aggravating factor, the potential punishment remains within the bounds of petty offenses "... exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions." *Duncan*, 391 U.S. at 160, 88 S.Ct. at 1453.

Field, therefore, argues that N.C.Gen. Stat. § 20–179 is not merely a sentencing proceeding, but creates an additional sub-

stantive element of the underlying conviction, and that all procedural safeguards surrounding a formal trial thereby must be afforded the defendant. In so arguing, Field notes that upon judicial determination of the existence of a grossly aggravating factor, the increase in the permissible penalty is mandatory, as is a minimum 7 day jail sentence, as opposed to an enhancement resulting from judicial discretion. Field argues that such is not an aggravating factor, in that it fails to provide for a discretionary increase in sentencing penalties within the range legislatively prescribed for the offense in question. Rather, Field maintains that such is an aggravating element of an offense, requiring trial by jury, in that it provides for increased punishment over and above that which otherwise could be imposed for the basic offense in question.

Turning to the gravamen of petitioner's complaint, as delineated above, the court notes the following:

While the due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged, *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), where a state links punishment to "the presence or absence of an identified fact" the state need not prove, necessarily, that fact beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

In the recent case of *McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the U.S. Supreme Court upheld a statutory scheme that divests a judge of his discretion in sentencing individuals found guilty of felonies involving firearms, despite attacks based upon the fourteenth amendment's due process clause and the sixth amendment's guarantee of a jury trial. Under the Pennsylvania Mandatory Minimum Sentencing Act, a defendant convicted of certain felonies must be given a five year minimum prison sentence if the sentencing judge finds, by a preponderance of the evidence, that the defendant "visibly

possessed a firearm" while committing the crime. The defendants argued that visible possession of a firearm was an element of the crime and therefore must be proved beyond a reasonable doubt under *In re Winship, supra,* and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In a 5 to 4 decision, however, the Court pointed out that the state legislature specifically had made gun possession a sentencing factor rather than an element of the offense. The court thereby regarded *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), as controlling, acknowledging that the state's choice in such matters is ordinarily given deference, and held that the state properly could treat visible possession of a firearm as a sentencing consideration rather than an element of a particular offense that must be proved beyond a reasonable doubt. *McMillan,* —— U.S. at ——, 106 S.Ct. at 2416. In discussing the dichotomy between *Patterson* and *Winship/Mullaney,* however, the Court noted that there are constitutional limits beyond which a state may not go in this regard. *Id.* Whereas the *McMillan* court found that these limits had not been exceeded, this court finds such limits to have been exceeded in the case at bar for the following reasons:

First, the *McMillan* opinion contains the following language:

Section 9712 [of Pennsylvania's Mandatory Minimum Sentencing Act] neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range *already* available to it without the special finding of visible possession of a firearm. Section 9712 "ups the ante" for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive

offense. Petitioner's claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if a finding of visible possession *exposed them to greater or additional punishment,* cf. 18 U.S.C. § 2113(d) (providing separate and greater punishment for bank robberies accomplished through "use of a dangerous weapon or device"), but it does not.

—— U.S. at ——, 106 S.Ct. at 2417-2418 (footnotes omitted) (emphasis added). The court finds support for Fields' contention in this quoted language, in that in the instant case the finding of resultant serious injury in fact exposed Field to a greater punishment.[5]

Second, in *McMillan,* the elements of the enumerated offenses were established in 1972 in essentially their present form, well before the enactment of the Pennsylvania Mandatory Minimum Sentencing Act in 1982. The *McMillan* court regarded this fact as negating "... the specter ... of [the] state[ ] restructuring existing crimes in order to "evade" the command[ ] of *Winship* ..." that the state must prove, beyond a reasonable doubt, every element of the crime charged.[6] —— U.S. at ——, 106 S.Ct. at 2418. The history of the North Carolina legislation does not infer similar negation. N.C.Gen.Stat. § 20–138.1, defining *the crime of driving while impaired,* and N.C.Gen.Stat. § 20–179, allowing expansion of the range of the permissible sentence upon the finding of a grossly aggravating factor, were enacted simultaneously and pursuant to an integrated plan for dealing with driving impaired by alcohol or drugs, in legislation known as the Safe Roads Act, enacted in 1983.

Third, the risk of error in the context of a N.C.Gen.Stat. § 20–179 proceeding is comparatively extensive—"serious injury" not being defined and to some degree being undefinable,. and the proximate cause thereof being frequently problematical. The delineation of injury from serious injury (as with beauty) undoubtedly will vary with the eye of the beholder. Proximate causation includes the attendant issues of contributory negligence, comparative negligence, independent contributing causation (e.g. lack of crashworthiness of a vehicle,) etc. The determination thereof, at least in any case where reasonable men might differ, is historically a function of the jury. In contrast to the risk of error attendant to a determination of serious injury caused by impaired driving, the risk of error in *McMillan* was "comparatively slight"—the word firearm being defined by statute, —— U.S. at —— n. 1, 106 S.Ct. at 2414, n. 1, and its visible possession being a simple straightforward issue susceptible of objective proof. *Id.* at ——, 106 S.Ct. at 2414.[7]

Fourth, in the *McMillan* case, the state gave notice, as required by the Act, that at sentencing it would seek to proceed under the Pennsylvania Mandatory Minimum Sentencing Act. *Id.* at —— n. 1, 106 S.Ct. at 2414 n. 1. In the instant case, there is no suggestion that Field similarly was forewarned of the potential derogation of his liberty interest as a result of a court adjudicated fact, nor is there any requirement in the North Carolina statutory scheme requiring that such notice be given.

---

**5.** Absent such a finding in this case, Field would have been exposed to the Level Three punishment at most, N.C.Gen.Stat. § 20–179(f), which carries a maximum term of six months. N.C. Gen.Stat. § 20–179(i).

**6.** In *Mullaney v. Wilbur, supra.,* Justice Powell, writing for the court, noted that if *Winship* were limited to those elements that constituted a crime as formerly defined by state law, any state could eviscerate the force of that decision by redefining crimes so that many of the elements formerly necessary for conviction would instead be characterized as factors bearing solely on the extent of punishment. 421 U.S. at 698, 95 S.Ct. at 1889.

**7.** The court perceives the "risk of error" phrase in *McMillan* to mean that the *McMillan* court viewed as small the probability that reasonable men would differ as to the determination of the visible possession of a firearm during the commission of a felony.

Fifth, the mandatory jail sentence under Level Two punishment is one of an aggregate of factors which this court finds entitles Field to a jury trial. In reaching this conclusion, the court is mindful that the mandated period of imprisonment (seven days), *per se,* is less than that which constitutionally can be imposed for a petty offense not required to be tried by a jury. In short, the length of such sentence alone is not of such constitutional dimensions as to require trial by a jury herein. *See Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).

Furthermore, the court is aware that, in *McMillan,* the Supreme Court approved a mandatory five year prison sentence predicated upon a court adjudicated fact, and as to the *McMillan* decision, this court has the following comment:

There is no doubt that the legislature can establish a minimum sentence for a particular offense, *see, McMillan, supra.,* and in so doing, prescribe punishment without regard to the circumstances of the offense and hence without regard to mitigating factors. In such event, the right to a jury trial affords a Defendant protection in that the jury (although without knowledge of the applicable range of punishment available to the sentencing Judge) may find application of the statute to the Defendant's conduct, although permissible in law, unwarranted by the facts of the case. The pragmatic protection thus afforded by a jury trial would seem to be significant. For this reason, where a mandatory penalty is predicated upon a court adjudicated fact relating to the seriousness of the offense (as opposed to the character of the defendant), and the sentence under the statute exceeds six months, this court, were it writing upon a clean slate, would find such to be in derogation of a Defendant's liberty interest so as to mandate, if requested, the protection afforded by jury trial against rigid application of law to the facts.

Notwithstanding the views of this court, it is now settled law (by virtue of *McMillan* ) that the length of a minimum sentence predicated upon a court adjudicated fact does not, *per se,* entitle a defendant to a jury trial. It is not the length of the mandatory sentence under Level Two punishment *per se,* however, that this court perceives to weigh in favor of a right to jury trial. Rather, while the length of sentence is of some import, one must also consider the stigma which an active sentence places upon a defendant's name, a stigma not lightly accepted nor easily borne by many. Indeed, such stigma may contribute significantly to a general deterrent of impaired driving, which, in turn, may be the reason for the inclusion of an active sentence in the sentencing scheme.

Although the court does not regard *McMillan* as controlling in the case *sub judice,* it recognizes that three facts in the instant case are similar to those existent in *McMillan,* to-wit:

(a) The North Carolina Legislature expressly has separated the elements of driving while impaired from the sentencing provisions applicable thereto.

(b) The North Carolina legislation creates no presumption of the sort condemned in *McFarland v. American Sugar Refining Co.,* 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899 (1916) (presumption from price paid for sugar that refiner was a party to a monopoly), or *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) (presumption that convicted felon who possessed a weapon obtained it in interstate commerce). *See McMillan,* —— U.S. at ——, 106 S.Ct. at 2417.

(c) The state is not relieved of its burden of proving beyond a reasonable doubt the elements of the crime of driving while impaired.

■ The foregoing are not determinative, however, as the Supreme Court has never attempted to define precisely the constitutional limits in *Patterson,* i.e., the extent to which due process forbids the reallocation or reduction of burdens of proof in criminal cases. *Id.* at ——, 106 S.Ct. at 2417. This court has considered the close division of opinion in *McMillan,* and is per-

suaded by factors 1 through 5 enumerated hereinbefore, *supra*, at pages 1373–75, not existent in *McMillan*, that N.C.Gen. Stat. § 20–179 does exceed those limits.

In reaching this conclusion, the court is aware of the decision of the North Carolina Supreme Court in the case of *State v. Denning*, *supra*, filed May 6, 1986, wherein it was held that the trial judge's consideration of a separate enumerated grossly aggravating factor—conviction of a similar offense within seven years (an aggravating factor calling for Level Two punishment)—was not susceptible to constitutional challenge. The *Denning* court, however, did not have before it the benefit of the *McMillan* opinion, which was not decided until June 19, 1986. Additionally, the *Denning* case is inapposite in that the grossly aggravating factor before the *Denning* court—a prior conviction—was one not easily subject to dispute, and one to which the defendant already had been accorded his right to a jury trial. In this regard it is noted that N.C.Gen.Stat. §§ 20–138.1 and 179 embody a two-tiered sentencing scheme based in part upon three grossly aggravating factors.[8] The first two grossly aggravating factors are directed to the character of the defendant in that they are predicated upon the fact that the defendant is a recidivist who has been convicted of a specified number of previous crimes. Such convictions, as the possession of a firearm in *McMillan*, are within the knowledge of the defendant. Furthermore, prior convictions are generally readily ascertainable as matters of record, and inherently involve prior adjudications of guilt or criminal tendencies, separate from the determination of the predicate offense the sentencing for which they will affect. Decisions, such as *Denning*, upholding two-tiered sentencing schemes predicated upon recidivistic factors (i.e., the need to tailor a sentence to the criminal rather than the crime) are inapposite to the instant case because:

(a) The serious injury to the person caused by impaired driving is unrelated to the character of the defendant, a traditional sentencing consideration. Rather, such is a measure of the seriousness of the offense.

(b) Serious injury to person and the cause thereof is not peculiarly within the knowledge of an impaired driver. Indeed, for many varied reasons, such a driver may be totally ignorant of the cause of such injury or the fact thereof.

(c) Serious injury and the cause thereof are not readily ascertainable as matters of record, as are (generally) prior convictions.

(d) Serious injury and the causation thereof have not been the subject of any prior adjudication.

The foregoing distinctions argue against the relaxation of trial standards as related to the subject "sentencing" factor, for the chance of its erroneous determination and consequent deprivation of a defendant's liberty is much greater than in the case of the determination of recidivistic factors, as in *Denning*. The facts relating to the existence of "serious injury ... caused by ... impaired driving" are relevant to determining the severity of criminal conduct violative of the Safe Roads Act, and therefore are more appropriately weighed by the jury. In the last analysis, the aggregate factors of the subject offense and concomitant sentencing scheme must afford a defendant protection against unfounded criminal charges maliciously brought, against judges too responsive to the voice of higher authority, against arbitrary action, against the corrupt or overzealous prosecutor, and against the compliant, biased or eccentric judge. *See, Duncan v. Louisiana, supra*.

■ In determining whether such protection is afforded, the question of whether a particular fact is an element of a criminal offense is one which must be decided within constitutional parameters, and is a decision which cannot be abdicated to the

---

**8.** For a discussion of procedural safeguards required by two tiered sentencing schemes, see Note, *The Constitutionality of Statutes Permit-* *ting Increased Sentences for Habitual or Dangerous Criminals*, 89 Harv.L.Rev. 356 (1975).

states. In the instant case, a judicial finding that the defendant's impaired driving caused serious injury to persons, places a greater stigma upon the defendant's name than simply a finding that he drove while impaired. Such finding automatically subjected Field to a mandatory active jail sentence and a range of permissible punishment that is twice as severe as the maximum punishment to which he otherwise was subject. A specific component of a prohibited transaction which gives rise to both a special stigma and to an enhanced permissible punishment must be treated as a fact necessary to constitute the crime. For the foregoing reasons, the court believes inadequate protection was afforded the defendant under the offense and sentencing scheme of N.C.Gen.Stat. §§ 20–138.1 and 20–179, and that the defendant has been deprived of his fourteenth amendment guarantee of due process, and his sixth amendment guarantee of trial by jury. Petitioner's application for writ of habeas corpus is hereby GRANTED, and it is therefore ORDERED that he be retried, or in the alternative, resentenced, within sixty (60) days of the date hereof in accordance with the views herein expressed.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION, NEW TRIAL AND RELIEF FROM JUDGMENT

On August 1, 1986, this court granted petitioner's application for writ of habeas corpus finding that inadequate protection was afforded petitioner as a defendant under the offense and sentencing scheme of N.C.Gen.Stat. §§ 20–138.1 and 179, and that petitioner had been deprived of his fourteenth amendment guarantee of due process and his sixth amendment guarantee of trial by jury. The court ordered that petitioner be retried, or in the alternative, resentenced, within sixty (60) days thereof. This action is back before the court on respondents' Motion for Reconsideration, A New Trial, and Relief From Judgment, filed August 11, 1986.

█ Although this is not strictly a civil action, the Federal Rules of Civil Procedure are applied when consistent with the spirit of the habeas corpus statutes. *Browder v. Director, Illinois Department of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978). Consequently, the court will address respondents' motion pursuant to Rule 59 of the Federal Rules of Civil Procedure.

The court, in considering the instant motion, does not wish merely to repeat its August 1 order; however, respondents contest all of the reasons and conclusions thereof. Therefore, the court knows of no way other than to address respondents' contentions *seriatim*, which parallel the August 1 order. Prior to addressing respondents' contentions, a brief review of Field's petition and the order of this court granting such petition is appropriate.

In his petition, Field contended that his constitutional right to a trial by jury was denied by N.C.Gen.Stat. §§ 20–138.1 and 179, in that the trial judge was permitted to find the grossly aggravating factor of serious injury to another person caused by Field's impaired driving. Such a finding thereby decreased the discretion of the sentencing judge and increased the maximum permissible sentence for Field's conviction. Respondents contended, however, that the grossly aggravating factor before the sentencing judge was not an element of the offense, its consideration for purposes of sentencing being a function for the judge and therefore not susceptible to constitutional challenge based upon the sixth amendment right to a jury trial.

Essentially Field argued that N.C.Gen. Stat. § 20–179 is not merely a sentencing proceeding, but creates an additional substantive element of the underlying conviction and that all procedural safeguards surrounding a formal trial thereby must be afforded him. In so arguing, Field noted that upon judicial determination of the existence of a grossly aggravating factor, the increase in the permissible penalty to one year is mandatory as is a minimum seven day jail sentence, as opposed to an enhance-

ment resulting from judicial discretion. Field argued that such is not an aggravating factor, in that it fails to provide for a discretionary increase in sentencing penalties within the range legislatively prescribed for the offense in question. Rather, Field maintained, such is an aggravating element of the offense, requiring trial by jury, in that it provides for an increased punishment over and above that which otherwise could be imposed for the basic offense in question.

In the August 1 order, the court discussed the recent case of *McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 91 L.E.2d 67 (1986), wherein the Supreme Court upheld the Pennsylvania Mandatory Minimum Sentencing Act mandating that a defendant, convicted of certain specified felonies, be given a five year minimum prison sentence if the sentencing judge found, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" while committing the crime. Order at 1373–76. In discussing the dichotomy between *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) and *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)/*Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court noted that there are constitutional limits beyond which a state may not go in defining what constitutes a criminal offense.

This court, with guidance from the 5–4 decision in *McMillan*, found that such constitutional limits had been exceeded by North Carolina and held that Field was entitled to have a jury determine the existence *vel non* of the grossly aggravating factor of serious injury to another person caused by the defendant's impaired driving for the following reasons:

1. The judicial determination of "serious injury to another person caused by the defendant's impaired driving" exposes the defendant to greater punishment than otherwise allowable;

2. The Safe Roads Act of 1983 repealed the offenses of driving under the influence of alcohol, (N.C.Gen.Stat. § 20–138),

and driving under the influence of drugs, (N.C.Gen.Stat. § 20–139), and created the single, new offense of driving while impaired (N.C.Gen.Stat. § 20–138.1);

3. The risk of error in the context of a N.C.Gen.Stat. § 20–179 proceeding is comparatively extensive—"serious injury" not being defined and to some degree being undefinable, and the proximate cause thereof being frequently problematical;

4. The provisions of N.C.Gen.Stat. § 20–179 do not require notice be given a defendant that the state will attempt to establish a grossly aggravating factor; and

5. The mandatory minimum sentence, which increases pursuant to the judicial determination, imposes a stigma upon a defendant so that the jury should be the finder of such fact.

Respondents advance two reasons why this court's order of August 1 is erroneous thus, justifying a new trial and a new judgment. First, respondents contend that the Supreme Court's decision in *McMillan v. Pennsylvania, supra*, controls the instant petition as the statute construed therein is identical to the statute at issue herein and thus mandates the petition's dismissal. Second, respondents contend that the North Carolina Supreme Court dealt with the same issues presented in the case at bar in *State v. Denning*, 316 N.C. 523, 342 S.E.2d 855 (1986) and reached the opposite conclusion which this court should now adopt. While the court will consider respondents' second argument more fully *infra*, the fact that respondents propound such an argument causes the court some concern.

The *Denning* court had before it a constitutional challenge to N.C.Gen.Stat. § 20–179(c)(1)—the grossly aggravating factor of conviction of a similar offense within seven years. On the other hand, the instant petition brings into question the constitutionality of N.C.Gen.Stat. § 20–179(c)(*3*). As this court pointed out in its August 1 order: "This opinion deals *solely* with the constitutionality of N.C.

Gen.Stat. § 20–179 as it relates to serious injury to another person caused by the defendant's impaired driving." Order at 1370 n. 3 (emphasis in original). The court feels that it is appropriate and necessary to stress that pursuant to Field's application for a writ of habeas corpus it has considered only the constitutionality of § 20–179(c)(3) and thus has dealt with the sole grossly aggravating factor of "serious personal injury caused by the defendant's impaired driving." Having pointed this out, the court is prepared to address each of respondents' contentions.

First, respondents contend that a finding of "serious personal injury" does not expose the defendant to greater punishment upon a conviction of Driving While Impaired (DWI). N.C.Gen.Stat. § 20–138.1. In order to properly address respondents' contention in this regard, an overview of the sentencing scheme of N.C.Gen.Stat. § 20–179 is necessary.

North Carolina General Statute § 20–138.1(d) provides that DWI is a misdemeanor [1] and that upon conviction, sentence is to be imposed by the presiding judge after a sentencing hearing and in accordance with N.C.Gen.Stat. § 20–179. Section 20–179 requires that one of five levels of punishment be imposed. The five levels of punishment range from 60 days to two years depending upon the court's determination of grossly aggravating factors and the balance the judge finds to be struck between aggravating and mitigating factors

Upon the court's determination of only one grossly aggravating factor, the sentencing court is required to impose Level Two punishment which mandates not less than seven days imprisonment and allows the judge discretion to impose up to and including one year imprisonment. N.C. Gen.Stat. § 20–179(c) & (h). Upon the court's determination of two or more grossly aggravating factors, the sentencing

court is required to impose Level One punishment mandating fourteen days imprisonment and allowing the judge discretion to impose up to and including two years imprisonment. N.C.Gen.Stat. § 20–179(c) & (g).

If no grossly aggravating factors are found by the presiding judge then Level Three punishment, which has the maximum possible sentence of six months, may be imposed if the court determines that the aggravating factors substantially outweigh any mitigating factors. N.C.Gen.Stat. § 20–179(f)(1) & (i). If there are no aggravating and mitigating factors, or if the aggravating factors are substantially counterbalanced by mitigating factors, the defendant is subject to Level Four punishment allowing not more than 120 days imprisonment. N.C.Gen.Stat. § 20–179(f)(2) & (j). Finally, if the mitigating factors substantially outweigh any aggravating factors, the defendant is subject to Level Five punishment allowing not more than 60 days imprisonment. N.C.Gen.Stat. § 20–179(f)(3) & (k).

In taking the position that a finding of "serious personal injury" does not expose the defendant to greater punishment, respondents argue that "under North Carolina law, DWI is a general misdemeanor which allows punishment of up to two years." Respondents' Memorandum in Support of Motion, filed August 11, 1986, at 3 (hereinafter "Memo"). Further, respondents argue that upon conviction of DWI if the state shows one grossly aggravating factor, then the maximum possible sentence for such a defendant is one year (as opposed to the two year maximum sentence to which *all* DWI defendants are exposed). Respondents also argue that a defendant's "actual sentence falls to a maximum term of imprisonment of six months" if the state cannot show serious

---

1. North Carolina General Statute § 20–176(b) provides the punishment for misdemeanors under the Motor Vehicle Code:

Unless another penalty is in this Article or by the laws of this State provided, every person convicted of a misdemeanor for the viola-

tion of any provision of this Article shall be punished by a fine of not more than one hundred dollars ($100.00) or by imprisonment in the county or municipal jail for not more than 60 days, or by both such fine and imprisonment.

injury or a prior conviction. *Id.* The court finds respondents' interpretation of the sentencing scheme found in N.C.Gen.Stat. § 20–179 unpersuasive.

In the instant case, the sentencing judge imposed Level Two punishment as he was required to do upon his determination that there was one grossly aggravating factor present.[2] If the judge had not determined that a grossly aggravating factor was present, Field would have been faced with the maximum possible sentence of "not less than 72 hours and not more than six months" in jail.

Thus, unless a judge finds that a grossly aggravating factor exists, a defendant's sentence upon conviction of § 20–138.1 can never be more than six months. Accordingly, respondents' contention that *all* defendants convicted under N.C.Gen.Stat. § 20–138.1 are exposed to imprisonment up to two years is simply not true. All defendants convicted of DWI are exposed to up to six months in jail depending upon the traditional balancing of aggravating and mitigating factors, *see, e.g.,* N.C.Gen.Stat. § 15A–1340.4, and only certain defendants in particular situations are exposed to a greater sentence. To interpret § 20–179 otherwise, would mean that although every defendant convicted of DWI under § 20–138.1 is subject to two years in prison, such possible maximum sentence is *reduced* by the judicial determination of one grossly aggravating factor. It is therefore more reasonable to interpret § 20–179 as subjecting every defendant to six months in prison *unless* the state shows one or more grossly aggravating factors in which case such defendant is subjected to imprisonment of one or two years.

Clearly, Field was subjected to an increased sentence due to the judicially determined fact that serious personal injury to another was caused by his impaired driving. Without such judicially determined fact, the maximum sentence Field could have received would have been six months.[3]

The second reason this court found support in *McMillan* for the conclusion that Field was denied his right to a jury trial by N.C.Gen.Stat. § 20–179 is that the elements of the enumerated offenses in *McMillan* had been established long before the Mandatory Minimum Sentencing Act was passed, whereas, *sub judice,* the Safe Roads Act of 1983 changed the elements of the offense in question. Respondents argue, however, that the elements of DWI were not changed by the amendments effected by the Safe Roads Act of 1983. This clearly is not the case. The Safe Roads Act replaced the offenses of driving under the influence of alcohol, N.C.Gen.Stat. § 20–138 (Repealed), and driving under the influence of drugs, N.C.Gen.Stat. § 20–139 (Repealed), with the single offense of driving while impaired, N.C.Gen.Stat. § 20–138.1. The merging of § 20–138(a) and (b) with § 20–139 into the new offense § 20–138.1 was not done without concomitant changing of elements.

Subsection (a) of § 20–138 made it unlawful and punishable pursuant to N.C.Gen. Stat. § 20–179 for any person to: (1) drive or operate a vehicle; (2) upon a highway or public vehicular area within the State; (3) while under the influence of an intoxicating liquor. Thus, there were three distinct elements of the offense. *See e.g., State v. Kellum,* 273 N.C. 348, 160 S.E.2d 76 (1968). Subsection (b) of § 20–138 made it unlaw-

---

**2.** Section 20–179(c) provides the three following grossly aggravating factors:

(1) A single conviction for an offense involving impaired driving, if the conviction occurred within seven years of the date of the offense for which the defendant is being sentenced.

(2) Driving by the defendant while his driver's license was revoked under G.S. 20–28, and the revocation was an impaired driving revocation under G.S. 20–28.2(a).

(3) Serious injury to another person caused by the defendant's impaired driving.

**3.** Section 20–179 requires that the prosecutor present all grossly aggravating factors to the sentencing judge. Respondents do not argue that there were any other grossly aggravating factors which the court could have relied on in imposing sentence. Thus if the court had not found grossly aggravating factor § 20–179(c)(3), Field would have been subjected to, at most, a Level Three punishment.

ful for any person to: (1) operate a vehicle; (2) upon a highway or public vehicular area within the State; (3) when the amount of alcohol in such person's blood was 0.10 percent or more by weight. Subsection (b) specifically provided that it was to "be treated as a lesser included offense of the offense of driving under the influence." N.C.Gen.Stat. § 20–138(b) (Repealed). North Carolina General Statute § 20–139(b) made it unlawful for any person "who is under the influence of any narcotic drug or who is under the influence of any other drug to such degree that his physical or mental faculties are appreciatly impaired, to drive or operate a motor vehicle upon any highway or public vehicular area within this State." N.C.Gen.Stat. § 20–179(b) (Repealed).

As indicated previously, the Safe Roads Act of 1983 combined the offenses found in §§ 20–138(a), (b) and 139(b) into the single offense § 20–138.1. Section 20–138.1 provides that a person commits the offense of impaired driving if (1) he drives a vehicle; (2) upon any highway, street or public vehicular area within the State; (3) (a) while under the influence of an impairing substance or (b) after having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more. Section 20–138.1 thus created a single offense which may be proved by either or both theories detailed above in (3)(a) and (3)(b). *See State v. Coker,* 312 N.C. 432, 323 S.E.2d 343 (1984). It is beyond attack that the Safe Roads Act of 1983 was designed to streamline prosecution of those persons who drive while under the influence of impairing substances and thus facilitate proof of a violation of the statute.

Sentencing for both the repealed sections, and the new DWI section, was provided for in N.C.Gen.Stat. § 20–179. Old § 20–179 provided a maximum jail sentence of six months in prison for the conviction of a first offense. N.C.Gen.Stat. § 20–179(1) (Repealed). For the conviction of a second offense, the maximum jail sentence in-

creased to not less than three days and not more than one year. § 20–179(2) (Repealed). For a third or subsequent conviction, the maximum jail sentence increased to not less than three days nor more than two years. § 20–179(3) (Repealed).

Unlike new § 20–179, under old § 20–179, a finding of serious personal injury to another caused by defendant's impaired driving could only be considered in aggravation of the offense but in no way could increase the punishment beyond six months in prison. In addition, when the State wanted to increase the punishment beyond the six months permissible for a first offense, § 20–179(1) (Repealed), it had to allege in its pleading that it was a second offense (or third or subsequent offense)[4] and had to prove beyond a reasonable doubt that a prior conviction for Driving Under the Influence (DUI) had occurred. *See State v. Powell,* 254 N.C. 231, 118 S.E.2d 617 (1961). Thus, respondents' assertion that "[t]he permissible sentence may have been raised for a particular defendant but all defendants convicted of a violation of N.C.Gen.Stat. § 20–138 (Repealed) had the possibility of being placed in jail for up to two years," is simply not true. In order for any particular defendant to have been sentenced to a jail term up to two years, he must have been found beyond a reasonable doubt, by a jury, to have three or more prior DUI convictions.

Respondents further cite *United States v. Kendrick,* 636 F.Supp. 189 (E.D.N.C. 1986), as support for the proposition that grossly aggravating factors are not elements of the crime of DWI. *Kendrick* dealt with the jurisdiction Federal Magistrates have in North Carolina pursuant to 18 U.S.C. § 13 assimilating N.C.Gen.Stat. §§ 20–138.1 & 179 and not with the issues presented herein. *Kendrick* is therefore inapposite to the instant case.

Third, respondents contend that the risk of error is not greater for serious personal injury, vis-a-vis use of a firearm as it relates to the Pennsylvania statute considered in *McMillan.* Respondents argue

---

**4.** This was the case unless the defendant stipulated to the prior conviction(s).

that "serious injury," readily definable by case law in North Carolina, would not be presented as a jury question upon remand in the instant case; instead, respondents assert that the jury would be peremptorily instructed to find such injury.[5] The foundation for such an assertion is that there was, in fact, serious personal injury to another. Further, respondents argue that the issues involving proximate causation *e.g.* contributory negligence, intervening negligence, etc., "are irrelevant unless these issues intervene to such an extent as to cut the causal connection between the DWI and the injury." Memo at 9. The court perceives a serious misunderstanding of its August 1 order on the part of respondents in the above contentions.

The court found "the risk of error in the context of a N.C.Gen.Stat. § 20–179 proceeding [to be] comparatively extensive— 'serious injury' not being defined and *to some degree* being undefinable, *and* the proximate cause thereof being frequently problematical." Order at 1374 (emphasis added). Thus, the court places as much emphasis, if not more, on the proximate causation aspect of the grossly aggravating factor § 20–179(c)(3)[6] in finding the risk of error to be comparatively extensive as on the serious injury aspect of that factor.

The court believes that the question of proximate causation, at least in any case where reasonable men might differ, is one which is traditionally a question for the jury. In North Carolina, this is settled law in civil actions: *see e.g. Davis v. Jessup*

*and Carroll v. Jessup,* 257 N.C. 215, 125 S.E.2d 440 (1962); *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E.2d 241 (1960); *Hudson v. Petroleum Transit Co.,* 250 N.C. 435, 108 S.E.2d 900 (1959); *Moore v. Town of Plymouth,* 249 N.C. 423, 106 S.E.2d 695 (1959); *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E.2d 331 (1954); *Rulane Gas Co. v. Montgomery Ward & Co.,* 231 N.C. 270, 56 S.E.2d 689 (1949); *Butner v. Spease,* 217 N.C. 82, 6 S.E.2d 808 (1940); *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446 (1935); *Hinnant v. Atlantic Coast Line R. Co.,* 202 N.C. 489, 163 S.E. 555 (1932); *Hester v. Miller,* 41 N.C.App. 509, 255 S.E.2d 318, *cert. denied,* 298 N.C. 296, 259 S.E.2d 913 (1979); *Earl v. Wyrick,* 22 N.C.App. 24, 205 S.E.2d 339, *cert. granted,* 285 N.C. 658, 207 S.E.2d 752, *rev'd,* 286 N.C. 175, 209 S.E.2d 469 (1974); and is apparently settled law in criminal actions: *see, e.g. State v. Harrington,* 260 N.C. 663, 133 S.E.2d 452 (1963); *State v. Tioran,* 65 N.C.App. 122, 308 S.E.2d 659 (1983) ("[T]he question of whether intervening negligence of another tortfeasor will operate to insulate the negligence of the original tortfeasor is ordinarily a question for the jury." 65 N.C.App. at 125, 308 S.E.2d at 662);[7] *see also State v. Hollingsworth,* 77 N.C.App. 36, 334 S.E.2d 463 (1985); *State v. Ellis,* 25 N.C.App. 319, 212 S.E.2d 909 (1975). Since this court was presented with the issue of whether Field had a right to a jury trial, the court considered the historical view of proximate causation being a jury question, as *a factor* in determining that a right to jury trial existed.

---

**5.** Respondents contend that upon remand of this case to state court for a jury trial on the grossly aggravating factor, once testimony is taken, the jury will be instructed as follows:

So I charge you that you are to decide whether this defendant caused serious injury as a result of driving while impaired. The defendant admitted that he was driving while impaired and ran a stop sign which resulted in an accident. The issue presented is whether injuries suffered are serious. I charge you that a broken knee cap, permanent partial disability, a cut requiring 29 stitches to close, and a broken nose which required surgery are serious injuries.

Memo at 8.

**6.** Lest we not forget that the grossly aggravating factor under consideration herein is: "Serious injury to another person *caused* by the defendant's impaired driving," N.C.Gen.Stat. § 20–179(3)(3) (emphasis added), and not: "serious injury to another person." In other words, the grossly aggravating factor under consideration presents a twofold inquiry, to-wit: whether (a) serious injury occurred and (b) whether defendant's impaired driving was the cause thereof.

**7.** The civil cases cited above were relied upon by the court in *Tioran* as authority for the proposition that causation is typically a question for the jury.

In the August 1 order, the court quoted at length from the Supreme Court decision in *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), attempting to establish, historically, the importance placed upon the right to a jury trial by citizens of this State and Country. It is not necessary to quote *Duncan* at great length again; however, the court feels it is appropriate to emphasize the following:

The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States.

*Duncan,* 391 U.S. at 155–56, 88 S.Ct. at 1451 (footnote omitted). The court feels that the above concerns are as valid now as when expressed by the Supreme Court in 1968. Accordingly, the court views the issue of proximate causation, one which traditionally is presented to a jury for determination, as one factor present which leads to the ultimate conclusion that the sentencing scheme of N.C.Gen.Stat. § 20–179, as it relates to subsection (c)(3), oversteps the constitutional bounds expressed in *Patterson, supra, Winship, supra,* and *Mullaney, supra.*

In opposing such a conclusion, respondents argue that there is no question of injury or causation presented by the facts in Field's case and, therefore, he has no right to a jury. It seems to the court that respondents are arguing that since Field is in fact guilty of what the sentencing judge found, his sixth amendment right to a jury trial could not have been violated. The court believes that such an argument is erroneous—the issue presented by Field's petition is whether he had a right to a jury trial in the first instance, which was denied to him, and not whether he is in fact ultimately guilty.

Respondents also argue that the risk of error revolving around "serious personal injury" (again overlooking the causation question) is no greater, and is probably less, than was present in *McMillan.* Respondents contend that each time a firearm is used in one of the specified crimes and not fired, there is a question of fact raised: "Was it a real gun or [a toy gun]?" Memo at 9. In propounding such an argument, respondents overlook factors present in *McMillan,* which this court found lacking *sub judice:* (1) in *McMillan* the statute *requires* the defendant be put on notice that the state would attempt to show the crime was committed with the use of a firearm and the defendant therefore knows that he must contest such attempt; and (2) the presence *vel non* of a gun and whether

it is a real gun or a toy gun is subject to objective determination. The statute at issue herein does not require that the defendant be put on notice that the State will attempt to show serious injury to another person caused by defendant's impaired driving. Moreover, serious injury and the causation thereof are not readily subject to objective determination.

The following three examples might help in understanding why the court feels that the question of serious injury to another person caused by defendant's impaired driving was one susceptible to "comparatively extensive" risk of error:

First, assume two drivers, Driver A has a .10 percent blood alcohol level and is thereby in violation of N.C.Gen.Stat. § 20-138.1, and Driver B has a .30 percent blood alcohol level and is thereby also in violation of § 20-138.1. Further, assume Driver A is otherwise driving legally while Driver B is driving recklessly. The two vehicles collide with Driver B being seriously injured while Driver A, only, comparatively, slightly intoxicated, is not injured. There exists a question of whether Driver A's impaired driving *caused* the serious injury to another person (Driver B). Seemingly, adopting respondents' position would mean that Driver B's intoxication and reckless driving are immaterial and irrelevant to the sentence which Driver A should receive (although a real question as to causation exists).

Second, assume the same two drivers, A and B, with the same levels of intoxication. Further, assume that Driver B is injured in the collision but only suffers a sprained arm. Driver B may malinger and attempt to show that the injury sustained is "serious" in order to be awarded insurance benefits, worker's compensation, etc. Driver A should be able to show that Driver B's injury is not in fact serious—a "defense" to which he may not know he is entitled until the "serious injury" factor is raised at the sentencing hearing.

Third, assume the same two drivers and levels of intoxication and that Driver B receives injuries serious enough to cause

him to become a parapalegic. Assume further that although Driver A does not recall the accident, he received no serious injury. Drivers A and B are the only two witnesses to the accident and neither can recall what took place. Both are charged with DWI. A question as to causation is present—one which has serious implications in relation to the mandatory minimum and permissible maximum sentence with which both Drivers A and B are faced.

The court feels that the above scenarios, and any countless possible ones not recounted, present real questions of injury and causation. Further, the court feels that such questions have been presented historically to a jury for determination as questions upon which reasonable men might differ. Finally, the court feels that these are questions which Field has a constitutional right to have decided by a jury, especially in light of the extreme increase in punishment which mandatorily results from a finding thereof.

Respondents contend that "[u]nder North Carolina law, if there is no real issue of proximate cause, then the jury is not instructed to consider it." Memo at 9. Cited as authority for such a proposition is North Carolina Pattern Instruction—Crim. 206.56, Death by Vehicle. A review of Instruction 206.56 reveals a misunderstanding thereof by respondents. Instruction 206.56 informs the jury that they must find two elements beyond reasonable doubt:

*First,* that the defendant violated any one of the following laws of this State governing the operation of motor vehicles. The laws of this State include (*define the pertinent traffic law(s) and enumerate its or their elements*).

*And second,* that the defendant's violation of (*describe law or ordinance violated*) proximately caused (*name victim*)'s death. A proximate cause is a real cause, a cause without which (*name victim*)'s death would not have occurred. (The defendant's violation need not have been the only cause or the last or nearest cause. It is sufficient if it is concurred with some other cause acting at the same

time, which, in combination with it, proximately caused the death of (*name victim*).) (emphasis in original).

Footnote 2 of 206.56 informs the court that "If there is no real issue as to proximate cause, omit the two sentences within the parentheses." Therefore, while there might not be a real issue as to proximate cause, the jury is still, clearly, instructed that they are to consider causation. Moreover, the jury is instructed that they must find that the death was proximately cause by defendant's violation of a traffic law beyond a reasonable doubt before the defendant can be found guilty of the offense. Thus the jury is instructed to consider proximate causation even though no real question as to causation exists, *i.e.*, there is no question as to intervening negligence, multiple causation, etc. In no event is the jury instructed that they are not to find proximate cause.

Fourth, respondents contend that notice was provided Field that the State would show the grossly aggravating factor. In the August 1 order, this court found that notice to the defendant as required by the Act in *McMillan* was support for concluding that Field was denied his right to a jury trial by N.C.Gen.Stat. § 20–179. Respondents do not contest such a difference as a distinguishing characteristic between the two statutes, arguing, instead, that Field was provided with sufficient notice by the statute's existence (even though notice is not expressly required by § 20–179) and by the district court trial.

■ The court, in the August 1 order, was, and still is, concerned with the safeguards which § 20–179 provides a defendant convicted under § 20–138.1. One concern was, and is, that § 20–179 does not require that the defendant be notified that the State will attempt to show serious injury to another person caused by the defendant's impaired driving. The court does not feel that constructive notice resulting from the mere fact that § 20–179 has been enacted is sufficient notice to equal the express notice required by the Pennsylvania statute construed in *McMillan*.

Respondents also attempt to rely on the fact that Field had a trial in district court to show that he had notice that the State would attempt to show the grossly aggravating factor. Under the bifurcated trial system in effect in North Carolina, Field's proceeding in superior court was *de novo*. N.C.Gen.Stat. §§ 7A–290; 15A–1431(b). A trial *de novo* is a new trial from beginning to end, on both law and facts, disregarding completely the plea, trial, verdict and judgment below; and the superior court judgment entered upon conviction there is wholly independent of any judgment which was entered in the inferior court. *See State v. Spencer*, 276 N.C. 535, 173 S.E.2d 765 (1970); *State v. Williams*, 41 N.C.App. 287, 254 S.E.2d 649, *cert. denied*, 297 N.C. 699, 259 S.E.2d 297 (1979). When an appeal of right is taken to the superior court in contemplation of law it is as if the case had been brought there originally and there had been no previous trial. The judgment appealed from is completely annulled and is not thereafter available for *any* purpose. *State v. Sparrow*, 276 N.C. 499, 173 S.E.2d 897 (1970). Moreover an accused is entitled to a trial *de novo* as a matter of right on appeal to the superior court from an inferior court, even when the accused enters a guilty plea in the inferior court. *State v. Fox*, 34 N.C.App. 576, 239 S.E.2d 471 (1977). As such, the State cannot rely on the district court proceeding as it, legally, never took place. Further, as pointed out previously, the question presented herein is not concerned with what in fact happened, but rather, whether the grossly aggravating factor § 20–179(c)(3) is a fact which a defendant is entitled to have found by a jury.

Finally, in regard to respondents' first ground for reconsideration, they argue that the mandatory seven-day sentence does not entitle petitioner to a jury trial. The court agrees that it is now settled, by virtue of *McMillan*, that a mandatory minimum sentence, such as the one *sub judice*, does not *per se* mandate a jury trial. This court relied on the minimum mandatory sentence as one factor which pointed toward requir-

ing a jury trial, especially in light of the other factors which were discussed in the August 1 order and herein. The court feels that the stigma associated with a prison term is a factor which appropriately should be considered, and in fact was considered in *McMillan,* when determining whether a state has overstepped constitutional limits in not providing persons charged with a crime a jury trial.

Respondents argue that such stigma should not be considered in determining whether a right to a jury trial attaches, and relies on *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) therefor. The court in *Spaziano* upheld the Florida capital sentencing procedure which allows a trial judge to disregard a jury recommendation that life imprisonment be imposed and, instead, impose the death penalty. A very important factor distinguishes *Spaziano* from the instant case.

In *Spaziano,* the trial judge found that a murder was heinous, atrocious and cruel and therefore imposed the death penalty. This finding, while going to the seriousness of the crime, was based upon facts which were found to exist beyond a reasonable doubt by a jury, *i.e.,* that the victim's murder, however carried out, was in fact perpetrated by the defendant. In such a case there is no question, constitutionally, that the defendant did the acts for which he was convicted and the sentencing judge could, constitutionally, weigh the seriousness of those acts in setting sentence.

However, at bar, the factors going to the seriousness of the offense have never been decided beyond a reasonable doubt by a jury. The sentencing judge was thus finding facts which thereafter required him to impose a sentence harsher than otherwise required and allowed him to impose a sentence greater than otherwise permissible. The difference is that in *Spaziano,* the sentencing judge was weighing the seriousness of facts found to exist by a jury, whereas *sub judice* the sentencing judge was finding facts not previously found to

exist and thereafter determining the seriousness of such facts.

Respondents indicate that only if serious personal injury has been considered an element traditionally presented to a jury should such a sentencing factor be unconstitutional. Memo at 14. Respondents contend that such is not the case and argue that serious personal injury relates to the seriousness of the offense which has always been considered appropriate in sentencing. The court agrees with respondents to an extent, *i.e.,* that the seriousness of the offense is a sentencing factor, at least in determining the specific sentence to be imposed within a specific maximum possible term. However, as discussed *supra,* such an evaluation is predicated on facts constitutionally found to exist. Such is not the case within the scheme of § 20–179 where the judge determines the "seriousness of the offense" on evidence which may never have been presented to a jury.

Moreover, respondents' argument centers upon the serious personal injury aspect while totally forgetting or ignoring the causation aspect of such grossly aggravating factor. While the seriousness of the offense may be a traditional sentencing factor, causation has traditionally been a question for the jury to decide. Once the causation of an injury has been tied to the defendant's impaired driving, the court agrees that the seriousness of defendant's conduct is appropriate for consideration when imposing sentence. However, the same cannot be said about the seriousness of the offense when it has not been proven constitutionally that the defendant did what the court is relying upon in setting sentence.

Recall the previous discussion of the Death by Vehicle jury instruction, wherein the jury must find beyond a reasonable doubt that the defendant proximately caused the victim's death even though no question of causation is presented by the facts. Once a jury finds the defendant guilty of such a crime, a court may appropriately consider the seriousness of the of-

fense when imposing sentence within the permissible maximum limits. Thus, the court considers serious personal injury *caused* by defendant's impaired driving to be traditionally considered an element of a crime as opposed to a sentencing factor.

The second ground for reconsideration advanced by respondents is that the North Carolina Supreme Court dealt with the same issues presented herein in *State v. Denning, supra,* finding that grossly aggravating factors in § 20–179(c) do not constitutionally require a jury trial. Respondents present four reasons why the holding in *Denning* is correct and should be applied herein mandating a like conclusion by this court. Three of these arguments address the *Denning* holding *per se* and are inapposite herein due to the fact that the *Denning* court considered a statutorily and substantively separate grossly aggravating factor than is presented herein. It would be improper for this court to consider the constitutionality of the grossly aggravating factor presented in *Denning* and, thus, the court will not address respondents' arguments directed thereto.

In the August 1 order, the court found four reasons why decisions, such as *Denning,* which uphold two-tiered sentencing schemes predicated on rescidivistic factors were not applicable to the instant case:

(a) The serious injury to the person caused by impaired driving is unrelated to the character of the defendant, a traditional sentencing consideration. Rather, such is a measure of the seriousness of the offense.

(b) Serious injury to another person and the cause thereof is not particularly within the knowledge of an impaired driver. Indeed, for many varied reasons, such a driver may be totally ignorant of the cause of such an injury or the fact thereof.

(c) Serious injury and the cause thereof are not readily ascertainable as matters of record, as are (generally) prior convictions.

(d) Serious injury and the causation thereof have not been the subject of any prior adjudication.

With regard to the first reason above, respondents argue that "[t]he seriousness of the offense is a traditional sentencing factor. Otherwise, why do judges have a range for sentencing?" While the court, as discussed above, agrees that the seriousness of the crime is a proper consideration once the facts have been properly determined, the problem with § 20–179(c)(3) is not encompassed within respondents' rhetorical question. The answer to respondents' question, at least under N.C.Gen.Stat. § 20–179, is that the judge determines the seriousness of the offense in order to impose a *greater* sentence than otherwise allowable, rather than considering the seriousness of the offense to determine what sentence is appropriate within specified parameters.

■ The State cannot constitutionally create the presumption that because there was a serious injury, it was caused by the defendant's impaired driving because he was (1) driving a vehicle (2) upon any public vehicular area, and (3) while under the influence of an impairing substance or after having consumed sufficient alcohol that the defendant had at any relevant time after the driving, an alcohol concentration of 0.10 or more, and thereby subject a defendant to a greater punishment than available if no serious injury had been present. *Cf. Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The sentencing judge traditionally has a range within which to set a sentence. However, N.C. Gen.Stat. § 20–179 requires, this court believes unconstitutionally, that the sentencing judge impose a greater minimum sentence, and allows a greater possible maximum sentence than otherwise is available on the sole basis of a judicially determined fact.

Respondents' argument that Field is in fact guilty and therefore his constitutional right to a jury trial has not been abrogated

by § 20–179, has been dealt with *supra,* and need not be addressed again. Suffice it to say that Field is not, in fact, guilty until he pleads guilty or is found to be so by a jury of his peers beyond a reasonable doubt as to all the elements of the crime for which the State seeks to impose sentence.[8]

With regard to reason (c) above, respondents argue that a judge would peremptorily instruct a jury in this case because the injury and its cause are readily ascertainable and without dispute. Such argument has likewise been dealt with *supra* and merits no further consideration.

Finally, with regard to reason (d) above, respondents contend that serious injury has been the subject of prior adjudication—within the instant litigation. Such an argument is markedly frivolous and shows a complete lack of understanding of this court's prior order. Serious injury to another person caused by Field's impaired driving has *never* been adjudicated within the constitutional parameters this court finds required. See the court's discussion *supra* of the effect Field's appeal *de novo* to superior court has on the judgment entered in district court. Further, as compared to the other two grossly aggravating factors found in § 20–179(c) (and the recidivistic factors this court finds inapposite to this case) the grossly aggravating factor at issue herein has not been adjudicated previously, notwithstanding the prior district court trial. Moreover, respondents' assertion that "[t]he only reason prior adjudication is significant in a recidivistic sentencing scheme is because it precludes the defendant from attacking the judicially found fact," Memo at 22, is without merit. The reason prior adjudication is significant is that such fact has been found to exist either by a jury beyond a reasonable doubt or by the defendant's confession of guilt. Thus the significance of "prior adjudication" is that such fact *is constitutionally* beyond reproach—which is not the case with the factor under consideration herein.

In viewing the five factors gleaned from *McMillan, in toto* as each relates to the other and to the statute in question, the court holds that, for the reasons expressed in the August 1 order and herein, petitioner is entitled to have the grossly aggravating factor of serious injury to another person caused by his impaired driving considered by a jury and found beyond a reasonable doubt before the State may impose the sentence which he has already received. Accordingly, respondents' motion for a new trial and relief from judgment is hereby DENIED.

SO ORDERED.

---

**8.** Society's legitimate concern for punishing crime cannot be effected "without heeding the mode by which it is accomplished." *Connecticut v. Johnson,* 460 U.S. 73, 86, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (*quoting Bollenbach v. United States,* 326 U.S. 607, 614–15, 66 S.Ct. 402, 405–06, 90 L.Ed. 350 (1946)).